1   Steven A. Alpert (SBN 8353)
    Price Law Group, APC
2   1350 East Flamingo Road, Suite 15a
    Las Vegas, NV 89119
3   (702) 794-2008 Telephone
    (702) 794-2009 Facsimile

4   Attorney for Debtors,
    Brian Keith Thomas and Rhayne Marcella Thomas

5

6

7

8                    UNITED STATES BANKRUPTCY COURT

9                        DISTRICT OF NEVADA

10

11    In re:                          Case No: 09-27642-lbr

12                                     Chapter 13

13                                     MOTION FOR ORDERS DETERMINING
                                       VALUE OF REAL PROPERTY, EXTENT
14  BRIAN KEITH THOMAS &               OF SECURED CLAIMS AND
                                       EXTINGUISHING THE LIEN OF
15  RHAYNE MARCELLA THOMAS,            WELLS FARGO BANK, N.A.;
                                       MEMORANDUM OF POINTS AND
16                                     AUTHORITIES; DECLARATION IN
                                       SUPPORT
17
                                       Hearing Information
18                                     Date:  November 19, 2009
                                       Time:  2:30 P.M.
19                                     Ctrm:  1
                   Debtors.           Place: 300 Las Vegas Blvd.
20                                     South, Las Vegas, NV 89101

21

22  ─────────────────────────────

23

24  TO THE HONORABLE LINDA B. RIEGLE, UNITED STATES BANKRUPTCY JUDGE;

25  WELLS FARGO BANK, N.A.; CHAPTER 13 TRUSTEE; AND ALL OTHER

26  INTERESTED PARTIES:

27

28

                                    -4-

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### BACKGROUND FACTS

Debtors BRIAN KEITH THOMAS & RHAYNE MARCELLA THOMAS ("Debtors") filed this Chapter 13 case on September 22, 2009. Debtors own and reside at 3761 Warmbreeze Way, Las Vegas, Nevada 89129(the "Real Property"). According to the declaration of the Debtor and appraiser, the Real Property had a value of $145,000.00. On the date of filing, the first deed of trust encumbered the Real Property in favor of Wells Fargo Home Mortgage Inc. ("Wells Fargo"). A true and correct copy of Wells Fargo's Home Mortgage reflecting a total principle balance of $290,127.55 as of October 8, 2009 is attached hereto and is incorporated by reference as **Exhibit "1"**. A second deed of trust encumbered the Real Property in favor of Wells Fargo Bank, N.A., ("RESPONDENT"). A true and correct copy of RESPONDENT's Account Statement reflecting a total principle balance of $51,895.74 as of September 19, 2009 is attached hereto and is incorporated by reference as **Exhibit "2"**.

### II.

### AUTHORITIES

**THE DECLARATION OF THE DEBTORS AND APPRAISER SHOWS THAT THE VALUE OF THE REAL PROPERTY WAS $145,000.00 AS OF THE TIME OF FILING.**

Pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedure (hereinafter "FRBP"), "[t]he court may determine the value of a claim secured by a lien on property in which the estate has an interest, on motion of any party in interest and after a hearing on

notice to the holder of the secured claim and any other entity as the court may direct …"

In this case, Debtors have provided the Court with a sworn declaration from debtor and appraiser, stating that the market value of the Real Property was $145,000.00 as of the time of filing.  As a resident of their house and of their neighborhood, the Debtors have knowledge of what homes in their area, and their home in particular, are worth.  Accordingly, Debtors request that the Court determine the value of the Real Property to be $145,000.00.

**GIVEN THE VALUE OF THE REAL PROPERTY, THE FIRST DEED OF TRUST IS UNDERSECURED AND THE SECOND DEED OF TRUST IS WHOLLY UNSECURED.**

FRBP 3012 implements Section 506(a) of the Bankruptcy Code with respect to valuation of a secured claim in order to determine the extent to which it is secured and the extent to which it is unsecured.  Section 506(a) provides:

"[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest,… is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property,… and is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim."

Additionally, section 506(d) states that, "[t]o the extent that a lien secures a claim against the debtor that it is not an allowed secured claim, such lien is void."

Section 506 is a section of general applicability and a Chapter 13 case allows bifurcation of a claim into secured and unsecured

1   portions.  <u>Wilson v. Commonwealth Mortgage Corp.</u>, 895 F.2d 123, 22

2   C.B.C. 561 (3rd Cir. 1990).

3       **AS A WHOLLY UNSECURED LIENHOLDER, RESPONDENT'S RIGHTS MAY BE**

4       **MODIFIED UNDER 11 U.S.C. §1322(B)(2) AND IT MAY BE TREATED AS AN**

5       **UNSECURED CREDITOR.**

6       Many courts, even prior to the passage of the BAPCPA of 2005,

7   had already held that <u>Nobleman v. American Savings Bank</u>, 13 S.Ct.

8   2106 (1993) was inapplicable when senior liens were in excess of the

9   fair market value of the property.  Therefore, the instant case would

10  fall outside the protection otherwise afforded by <u>Nobleman</u>, because

11  claimant's lien is wholly unsecured.

12      The passage of the Bankruptcy Reform Act of 1994 did not change

13  the ability of lien stripping of a wholly unsecured creditor.  It

14  merely provided that a loan which fully matured prior to the filing

15  of the Chapter 13 petition, or a loan which matures during the life

16  of the plan, may be paid through the plan.  11 U.S.C. §1322(b)(2).

17      Under <u>Nobleman</u>, a lien cannot be stripped if any portion of the

18  interest was secured.  Thus, by implication, when a lien is wholly

19  unsecured, it can be stripped.  Courts have consistently

20  distinguished between <u>Nobleman</u> and facts involving a wholly unsecured

21  lien holder.  In fact, most reported decisions have rejected the

22  proposition that <u>Nobleman</u> prohibits modification of a totally

23  unsecured lien on a chapter 13 debtor's principal residence.  These

24  Courts, along with the 9th Circuit Bankruptcy Appellate Panel,

25  interpret <u>Nobleman</u> to require the existence of an allowable secured

26  claim as the predicate for the protection form modification in 11

27  U.S.C. §1322(b)(2).

28

In the 9th Circuit Bankruptcy Appellate Panel Case, In re Lam, the Court held that:

> "The Nobleman decision holding that section 1322(b) bars a chapter 13 plan from modifying the rights of holders of claims, secured only by the debtor's principal residence, does not apply to holders of totally unsecured claims. The extension of the protections of section 1322(b) to wholly unsecured lien holders is contrary to the provisions of the bankruptcy code allowing dischargeability of unsecured claims."

In In re Lam, 121 B.R. 36, 41 (9th Cir. B.A.P. 1997), the Court concurred with the holding of several cases that permitted modification of secured creditor's claims that were wholly unsecured. Id., at 41.

Yet another California case has a similar holding to In re Lam. The Court in In re Geyer sustained a debtor's motion to avoid a lien brought under Bankruptcy Code Section 506(d) and held that a Chapter 13 debtor may strip off a lien on his or her primary residence when the lien holder's interest is totally unsecured, stating that:

> [T]he term 'secured claim' as used in section 1322(b)(2) has the same meaning as the term "secured claim" in section 506(a). Unless there is some equity to which the creditor's lien attaches, there is no allowed secured claim and no entitlement to the protection against modification contained in section 1322(b)(2). A chapter 13 debtor may 'strip-off' a lien on his or her primary residence under the plan or under section 506(d) when the lien holder's interest is totally unsecured.

In re Geyer, 203 B.R. 726, 729 (S.D. Cal. 1996).

The Court's ruling in the case at bar should be unaffected by the landmark Supreme Court case in Nobleman. In Nobleman, Justice Thomas held that Code Section 1322 (b)(2) prohibits splitting an undersecured home mortgage holder's claim into its secured and unsecured portions for purposes of confirmation of a Chapter 13 Plan. Nobleman, 13 S.Ct. 2106. Unlike the case at bar, in Nobleman, the lien to be stripped was the holder of the first deed of trust for

$71,335.00, and the debtor's principal residence was worth $23,500.00. Thus, the bank's claim was at least partially secured by the debtor's home.

Here, RESPONDENT's unsecured lien is not the first but the second deed of trust. Further, there can be no reasonable contention that any part of the second deed of trust is secured. Thus, the facts, reasoning and holding of Nobleman are inapplicable to this case.

In this case, the Real Property is Debtors' principal residence which has a market value of $145,000.00. The Debtors' Wells Fargo Home Mortgage reflects a total principle balance of $290,127.55 as of October 8, 2009. Thus, RESPONDENT's secured interest in the Real Property is zero because there is absolutely no equity to which its lien could attach.

Because RESPONDENT possesses a totally unsecured claim on Debtors' residence and it does not have an allowable secured claim, RESPONDENT cannot seek protection from modification under 11 U.S.C. §1322 (b)(2) and Debtor may modify the claim and avoid claimant's lien. Therefore, RESPONDENT's second deed of trust should be extinguished, reconveyed, and treated as unsecured for purposes of this Chapter 13 proceeding.

**IN RE DEWSNUP IS DISTINGUISHED FROM THE LIEN STRIPPING REQUESTED IN THIS CHAPTER 13 CASE.**

The Chapter 7 case Dewsnup v. Tim, 502 U.S. 410, 112 S. Ct. 773, 116 L.Ed.2d 903 (1992) has no application to this Chapter 13 case. The relevant cases are those Chapter 13 cases cited by Debtor above which turn on interpretations of §1322(b)(2). Those interpretations conclude that a Chapter 13 plan may modify the rights of claim

1  holders, other those **secured** only by a security interest in real

2  property that is the debtors' principal residence.

3      Section 1322(b)(2), in light of §506(a), does not preclude

4  modification by a Chapter 13 Plan of the rights of holders of

5  unsecured claims even those of holders of deeds of trust which are

6  completely unsecured.

7      To this end, Justice Scalia, in his dissent in <u>Dewsnup</u>, pointed

8  out the difference between lien stripping in a Chapter 7 case and

9  lien stripping in a Chapter 13 case when he stated that,

> "Respondents assume, for example, that a debtor in a
> Chapter 13 cannot strip down a mortgage placed on the
> debtor's home,; but that assumption may beg the very
> question the Court answers today.  True, Section 1322
> (b)(2) provides that Chapter 13 filers may not "modify the
> rights of secured claims", that are "secured only by a
> security interest in real property that is the debtor's
> principal residence.  But this can be and has been read, in
> light of Section 506(a), to prohibit modification of the
> mortgagee's rights only with respect to the operation of
> his claim that is deemed secured under the Code.  <u>See</u>,
> e.g., <u>In re Hart</u> 923 F.2d 1410, 1415 (CA 10 1991); <u>Wilson
> v. Commonwealth Mortgage Corp.</u>, 895 F.2d 123, 127 CA3
> 1990)."

<u>Dewsnup</u>, 502 U.S. 410, 428, 112 S. Ct. 773, 784.

    In <u>Denver v. Internal Revenue Service</u>, 164 B.R. 132 (C.D. Cal.

1994), the Court held that in spite of <u>Dewsnup</u>, stripping an IRS lien

on a principal residence is permissible in a Chapter 11 case.  The

Court noted that while under <u>Dewsnup</u>, Chapter 7 debtors cannot use

§506 to strip liens on an undersecured claim, the Supreme Court

specifically reserved the question as to the applicability of its

ruling in <u>Dewsnup</u> to cases under the reorganization chapters.  <u>Id.</u>,

at 133.  The Denver Court discussed the issue of lien stripping in

Chapter 13 cases and cited the 10th Circuit case of <u>In re Hart</u> wherein the Court reasoned:

> The dispositive issue in this case is whether Eastland's undersecured loan may be bifurcated into two claims by applying general principals of Section 506(a) to the mortgage and then protecting only the secured claim by provisions of Section 1322(b). We believe it can.

<u>In re Hart</u>, 923 F.2d 1410, 1413 (10th Cir. 1991).

> After citing <u>In re Hart</u>, in <u>Denver</u> the Court went on to state: "If Section 506 does not permit debtors to bifurcate undersecured claims and strip down liens to their collateral value, then all secured creditors would be freed of any concern that debtors could reduce the amount of their liens while retaining property. If Congress did not intend to allow lien stripping in general in Chapter 13 cases, then why would it bother to draft the exclusionary language of Section 1322. As Justice Stevens' concurring opinion in <u>Nobleman</u> emphasized, the legislative history of Section 1322(b)(2) reflects Congressional desire to provide special protections to residential lenders." <u>Denver</u>, at 141.

Accordingly, the language of the relevant Bankruptcy Code sections and the decisions interpreting those sections warrants a finding that RESPONDENT's lien arising from the deed of trust may be extinguished and that its claim may be treated as general unsecured in Debtors' plan.

III.

<u>CONCLUSION</u>

Based on the foregoing, Debtors request that the Court enter an order which:

1.    Establishes the value of the Real Property to be $145,000.00;

2.   Finds that Wells Fargo Home Mortgage security interest is senior to RESPONDENT's second claim in an amount that exceeds the value of the Real Property;

3.   Concludes that RESPONDENT's second claim is wholly unsecured;

4.   Extinguishes RESPONDENT's second lien and permits modification of the claim under §1322(b) (2).

DATED: October 9, 2009                    Price Law Group, APC

                                          By: _____
                                              Steven A. Alpert
                                              Attorney for Debtors

## DECLARATION OF DEBTOR BRIAN KEITH THOMAS

I, BRIAN KEITH THOMAS, declare:

1.  I am the debtor in this Chapter 13 bankruptcy, case number 09-27642-lbr.  I have personal knowledge of the facts stated in this declaration and could and would testify thereto if called as a witness.

2.  I filed this case on September 22, 2009.  I am the owner of real property located at 3761 Warmbreeze Way, Las Vegas, Nevada 89129(the "Real Property").  I live on the Real Property and disclosed it in my bankruptcy schedules.

3.  The Real Property was subject to a first deed of trust in favor of Wells Fargo Home Mortgage Inc., ("Wells Fargo") which had a balance of $290,127.55 as of October 8, 2009.  I do not dispute this amount.  A true and correct copy of Wells Fargo Home Mortgage is attached hereto and is incorporated by reference as **Exhibit "1"**.

4.  The Real Property was subject to a second deed of trust in favor of Wells Fargo Bank, N.A., ("Respondent") which had a balance of $51,895.74 as of September 19, 2009.  A true and correct copy of RESPONDENT's Account Statement is attached hereto and is incorporated by reference as **Exhibit "2"**.

5.  According to the appraisal done on my property on August 24, 2009, the fair market value for my property was $145,000.00.  A true and correct copy of the appraisal is attached hereto and incorporated by reference herein as **Exhibit "3"**.

6.  Based on my knowledge as a homeowner of my property and of conditions in my neighborhood, I believe my property to have been worth $145,000.00 as of the time of filing.

1        I declare under penalty of perjury that the foregoing is true

2   and correct.   Executed on October 9, 2009 at Las Vegas, Nevada.

3

4

5                                    *Brian Keith Thomas*
                                     BRIAN KEITH THOMAS

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF APPRAISER NATHAN P. SELLERS IN SUPPORT OF VALUATION OF DEBTORS REAL PROPERTY

I, Nathan P. Sellers, declare:

1. I am a Real Estate Appraiser, State of Nevada license Number NVA0006817-RES.  On or about August 24, 2009, I examined and appraised a single family residence located at 3761 Warmbreeze Way, Las Vegas, Nevada 89129 (the "Subject Property").

2. I make this declaration based upon my own personal, firsthand knowledge, my education, training, and experience in the field of Real Estate Appraisal, and if called as a witness, I could and would competently and truthfully testify thereto.

3. I have held a Nevada Real Estate Appraiser License since 2006.  I have been doing appraisals since 2003.

4. On or about August 24, 2009, I had occasion to conduct an appraisal of the Subject Property.  Attached hereto and incorporated by reference herein as **Exhibit "3"** is a true and correct copy of August 31, 2009 Residential Appraisal Summary Report (the "Appraisal Report").

6.    In preparing the Appraisal Report, I performed market research, inspected the Subject Property, both interior and exterior, measured the Subject Property to determine the square footage, and surveyed the immediate neighborhood.

7.    In determining the fair market value for the Subject Property, I used both the sales comparison approach and the cost approach, with the greater weight given to the sales comparison approach.  I consider the sales approach to be the most reliable in determining fair market value because it more accurately simulates buyers' perceptions and actions.

8.    Based upon my observations, inspection of the Subject Property, and market research as well as my training, education and experience as a residential appraiser, it is my professional opinion that the Subject Property has a fair market value of $145,000.00 as of August 24, 2009.

9.    I have no present or contemplated future interest in the subject property described in the appraisal report attached hereto as **Exhibit "3"**.   Neither my employment nor my compensation for this appraisal is contingent upon the value found.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and complete to the best of my knowledge. Executed this 9th day of October, 2009 at Henderson, Nevada.

_____
Nathan P. Sellers

Exhibit 1

17



708/        6875/CS249/1/1



October 08, 2009

Brian K Thomas
Rhayne M Thomas
3761  Warmbreeze Way
Las Vegas NV 89129

Fax: 7022559487

Dear Brian K Thomas & Rhayne M Thomas :

RE:  Loan Number:   ████ 6875                      Client 708
     Property Address:  3761 Warmbreeze Way
                        Las Vegas NV 89129

Thank you for your recent inquiry on the loan listed above.  We are
pleased to provide you with the information you requested.  Be aware this
information can change and should be used for verification purposes only.

| | | |
|---|---|---|
| Principal Balance: | $ | 290,127.55 |
| Escrow Balance: | | .00 |
| Monthly P&I Payment: | | 2,025.37 |
| Monthly Escrow Payment: | | 345.67 |
| Original Principal Balance: | | 290,128 |
| Interest Rate: | | 7.25000% |
| Date of Loan: | | 10-25-06 |
| Term: | | 333 |
| Loan Type: | | Conventional |
| Fixed or ARM: | | Fixed |

 Payment history information is reported to the following
 credit bureaus: Equifax, Experian, Innovis Data Solutions,
 and Trans Union Credit.

Please note these are not payoff figures. If you would like to request
the payoff balance, call a servicing representative at (866) 234-8271.

For information about whether this loan can be assumed, please contact
our Assumption department at (800) 340-0570.

If you need further assistance, servicing representatives are ready to
help you Monday through Friday, 6 AM to 10 PM; and Saturday, 8 AM to
2 PM, Central Time.  The phone number is (866) 234-8271. Please feel
free to call with any questions.

Sincerely,

Wells Fargo Home Mortgage

18

Exhibit 2

19

# Account Statement
Statement Date: September 19, 2009
Page 1 of 5
650 1132042 1998
   2,732        (CO650)
I-4



BRIAN K. THOMAS
3761 WARMBREEZE WAY
LAS VEGAS NV 89129-6879

## Customer Service

Telephone
**1-800-TO-WELLS (1-800-869-3557)**

Online Banking
**www.wellsfargo.com**

Correspondence
**Wells Fargo Bank, N.A.**
**PO Box 4233**
**Portland, Or 97208-4233**

Do not send payment to this address

## Payments

By mail
**Wells Fargo Bank, N.A.**
**P O Box 54780**
**Los Angeles, Ca 90054-0780**

Overnight mail
**Wells Fargo Bank, N.A.**
**Attn: Payment Services**
**2324 Overland Dr.**
**Billings, MT 59102-6491**

Principal only payments
**Wells Fargo Bank, N.A.**
**P O Box 515485**
**Los Angeles, CA 90051-6785**

## EquityLine with FlexAbility ℠
Brian K. Thomas
Account Number:  1998

## Activity summary

| | |
|---|---|
| Approved line of credit | |
| Credit in use: | $50,000.00 |
| Line 1998 | |
| Total credit in use | $49,971.55 |
| Available credit* | $49,971.55 |
| Beginning balance owed** | $0.00 |
| Ending balance owed** | $51,678.06 |
| *Line of Credit Restricted. | $51,895.74 |

**These balances include unpaid finance charges and other unpaid fees and charges. The ending balance owed is not a payoff amount. If you want to pay off and close your Home Equity Line of Credit, please contact Customer Service for detailed payoff instruction. Payoffs attempted in other ways may not close the account, resulting in a delay of the release of your collateral.*



# Account Statement

Statement Date: September 19, 2009
Page 2 of 5
650 1132042 1998
   2,733



**WELLS FARGO**

## Payment due

| Account number | Past due amount | Current amount | Payment due * |
|---|---|---|---|
| Line ▇▇▇ 1998 | $    1,652.05 | $    217.68 | $    1,924.19 |
| **Total payment due on 10/15**\*\* | | | $    1,924.19 |

\*   The line payment due amount includes late fees of $54.46.
\*\* Your payment coupon appears at the end of this statement.

*With interest-only payments, you do not reduce your principal balance unless you voluntarily make principal payments during the interest-only period. At the end of your interest-only period, you will be required to pay down principal, which may increase your payment amount substantially.*

## Activity detail

Line ▇▇▇ 1998

| Date effective | Description | Transaction amount | Principal balance* |
|---|---|---|---|
| 08/26 | Previous Balance | | $49,971.55 |
| 09/19 | Periodic Finance Charge | $217.68 | |
| 09/19 | Ending Balance | | $49,971.55 |

*Each change in the principal balance is shown.*

Any annual fee charged is a finance charge.

## Summary of Finance Charges

**Total Periodic Finance Charge for This Billing Period**

| | |
|---|---|
| Finance Charge for Line Balance at Standard Rate | $217.68 |
| Total Periodic Finance Charge | $217.68 |

## Standard Rate Finance Charge Detail

21

# Account Statement

Statement Date: September 19, 2009
Page 3 of 5

~~████████~~ 1998

2,734



| Account#/Balance Tiers | Effective Date | Number of Days | Corresponding Annual Percentage Rate | Daily Periodic Rate |
|---|---|---|---|---|
| Line # ████████ 1998 | | | | |
| $0.00 - $19,999.99 | 08/27 | 24 | 6.88% | 0.018835% |
| $20,000.00 - $49,999.99 | | 24 | 6.63% | 0.018150% |
| $50,000.00 and above | | 24 | 6.53% | 0.017876% |

Your rate(s) may vary according to the terms of your agreement.  You may pay your balance(s) in full at any time.
See the end of the statement for important information about your credit card and line of credit account.

Thank you for banking with Wells Fargo.

22

Exhibit 3

23

Main File No. NA209080605PRV  Page #2



**APPRAISAL OF REAL PROPERTY**

**LOCATED AT:**
3761 Warmbreeze Way
Plat Book 70, Block 64, Lot 50, Windgate Unit 2
Las Vegas, NV 89129-6679

**FOR:**
Thomas, B K
3761 Warmbreeze Way
Las Vegas, NV 89129

**AS OF:**
08/24/2009

**BY:**
APPRAISAL 2000
2538 Vera Cruz Circle
Henderson, NV 89074
(702) 597-5229
www.appraisal2000.net

24

Main File No. NA209080605PRV | Page #3

APPRAISAL 2000
2538 VERA CRUZ CIRCLE
HENDERSON NEVADA, 89074
PH:(702) 597-5229

Date: August 24, 2009

Thomas, B K
3761 Warmbreeze Way
Las Vegas, NV 89129

Re: Property:    3761 Warmbreeze Way
                 Las Vegas, NV 89129-8879
    Borrower:    Thomas, B K
    File No.:    NA209080605PRV

In accordance with your request, we have appraised the above referenced property. The report of that appraisal is attached.

The purpose of this appraisal is to estimate the market value of the property described in this appraisal report, as improved, in unencumbered fee simple title of ownership.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and city, and an economic analysis of the market for properties such as the subject. The appraisal was developed and the report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

The value conclusions reported are as of the effective date stated in the body of the report and contingent upon the certification and limiting conditions attached.

It has been a pleasure to assist you. Please do not hesitate to contact me or any of my staff if we can be of additional service to you.

Sincerely,

Nathan P Sellers

25

## SUMMARY OF SALIENT FEATURES

| | | |
|---|---|---|
| **SUBJECT INFORMATION** | Subject Address | 3761 Warmbreeze Way |
| | Legal Description | Plat Book 70, Block 64, Lot 50, Windgate Unit 2 |
| | City | Las Vegas |
| | County | Clark |
| | State | NV |
| | Zip Code | 89129-6878 |
| | Census Tract | 0032.09 |
| | Map Reference | [32] E-3 (Metro) |
| **SALES PRICE** | Sale Price | $ n/a |
| | Date of Sale | n/a |
| **CLIENT** | Borrower/Client | Thomas, B K |
| | Lender | Thomas, B K |
| **DESCRIPTION OF IMPROVEMENTS** | Size (Square Feet) | 1,991 |
| | Price per Square Foot | $ |
| | Location | Resident. Street |
| | Age | 1996 (13 yrs) |
| | Condition | Average |
| | Total Rooms | 7 |
| | Bedrooms | 3 |
| | Baths | 2.5 |
| **APPRAISER** | Appraiser | Nathan P Sellers |
| | Date of Appraised Value | 08/24/2009 |
| **VALUE** | Final Estimate of Value | $ 145,000 |

26

Appraisal 2000 LLC. (702) 597-5229

Main File No. NA209080605PRV Page #5

**Summary Appraisal Report**

# Uniform Residential Appraisal Report

NA209080605PRV
File # NA209080605PRV

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | |
|---|---|---|---|
| Property Address 3761 Warmbreeze Way | City Las Vegas | State NV | Zip Code 89129-6879 |

Borrower Thomas, B K    Owner of Public Record  Thomas, B K & R M    County Clark

Legal Description  Plat Book 70, Block 64, Lot 50, Windgate Unit 2

Assessor's Parcel #  136-09-221-032    Tax Year '09    R.E. Taxes $ 2,448.32

Neighborhood Name  Windgate    Map Reference  I321 E-3 (Metro)    Census Tract 0032.09

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ n/a    ☐ PUD  HOA $    ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe)  To determine fair market value as of appraisal effective date.

Lender/Client  Thomas, B K    Address  3761 Warmbreeze Way, Las Vegas, NV 89129

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).  No previous listings recorded in MLS for the previous 36 months.

☐ I  ☐ did  ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  n/a

Contract Price $ n/a    Date of Contract n/a    Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s)  Public Records

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☒ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.    n/a

**Note: Race and the racial composition of the neighborhood are not appraisal factors.**

| Neighborhood Characteristics | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☒ Stable ☐ Declining | | PRICE | AGE | One-Unit 85 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | $ (000) | (yrs) | 2-4 Unit % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | 95 Low | 0 | Multi-Family % |
| Neighborhood Boundaries    The neighborhood's market area is considered to be the W Lone Mountain Road, W | | | 245 High | 24 | Commercial 10 % |
| Buffalo Drive, W Lake Mead Blvd, and N Hualapai to the west. | | | 160 Pred. | 4 | Other 5 % |

Neighborhood Description    All public amenities are accessible, with schools, shopping, transportation, and recreational facilities all located within a 1-5 mile radius. The nearest freeway (US Highway 95) entrance is 1.0 miles east, allowing access to all major employment centers/opportunities. The area is comprised of a myriad of home sizes and styles ranging from tract homes to large acreage custom homes - the area is suburban.

Market Conditions (including support for the above conclusions)    Typical of the surrounding Las Vegas Valley, the immediate area has seen a period of continual population, employment, and infrastructure growth with the opening of the Las Vegas Strip. Presently, increased supply has resulted in declining values. Marketing times for the most recent sales in the area vary from 30-90 days at 98-100% of List Price.

| | | | |
|---|---|---|---|
| Dimensions See attached site plat map | Area 4,423 SF /0.10 Acres | Shape Rectangular / Average | View Valley/Good |

Specific Zoning Classification (R-CL)    Zoning Description Single-Family Compact-Lot District (R-CL)

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ (Underground) | Water | ☒ | ☐ | Street  Paved Asphalt | ☒ | ☐ |
| Gas | ☒ | ☐ | Sanitary Sewer | ☒ | ☐ | Alley  None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No    FEMA Flood Zone X    FEMA Map # 32003C2135E    FEMA Map Date 9/27/2002

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe

No apparent adverse easements or encroachments noted.

| General Description | Foundation | Exterior Description  materials/condition | Interior  materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | Foundation Walls  Poured Conc/AA | Floors  Carpet/Tile/AbAvg |
| # of Stories  2 Story | ☐ Full Basement ☐ Partial Basement | Exterior Walls  Stucco/AbAvg | Walls  Drywall/Avg |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area  n/a sq.ft. | Roof Surface  Tiled Roof/AbAvg | Trim/Finish  WoodTrim/Avg |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish  n/a % | Gutters & Downspouts  Roof/Overhng/AbAvg | Bath Floor  Vinyl Floor/Avg |
| Design (Style)  2Stry/Conv/Avg | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type  Dbl/Alumin/AbAvg | Bath Wainscot  Fiberglass/Avg |
| Year Built  1996 | Evidence of ☐ Infestation  None noted | Storm Sash/Insulated  None/None | Car Storage ☐ None |
| Effective Age (Yrs)  13 years | ☒ Dampness ☒ Settlement | Screens  Window/Door/AbAv | ☒ Driveway  # of Cars  3 |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities  ☐ Woodstove(s) # | Driveway Surface  Conc. Paver |
| ☐ Drop Stair ☐ Stairs | ☐ Other  Fuel  Gas | ☒ Fireplace(s) # 1 ☒ Fence CB Walls | ☒ Garage  # of Cars  3 |
| ☐ Floor ☐ Scuttle | Cooling ☒ Central Air Conditioning | ☒ Patio/Deck  Cover ☒ Porch  Covered | ☐ Carport  # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Pool ☐ Other | ☐ Att. ☐ Det. ☒ Built-in |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☐ Microwave ☒ Washer/Dryer ☒ Other (describe)  Industrial Fan

Finished area above grade contains:    7 Rooms    3 Bedrooms    2.5 Bath(s)    1,991 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).    The subject home is a wood framed two story noted to have stucco exterior finish, concrete tiled roof, 2 A/C units, elevated ceilings, window blinds, double aluminum windows, fireplace, water heater, and adequate fenestration.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).    See "Depreciation Comments" on the attached addenda. The subject home is noted to be in 'average' overall condition. The home has basic upgrades and finishes within vinyl flooring and tile countertops. The home has been very well maintained and was noted to have little signs of aging. All mechanical and utility systems were on and functioning properly. See the attached addenda pages for specific list of finishes and fixtures.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No  If Yes, describe

The subject has been very well maintained, and there is no evidence of adverse conditions or physical deficiencies. There were no readily apparent deficiencies or repairs noted. The subject living area is noted in tax records to have 1,928 sf of living area; however, upon measuring the home, the appraiser noted the total calculated GLA is 1,991 sf of total living area.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe

The surrounding area is predominantly residential in nature with homes constructed currently and during the late 1990's - 2000's.

27

## Uniform Residential Appraisal Report

NA209080605PRV
File # NA209080605PRV

There are +/-52  comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 80,000  to $ 495,950
There are +/-73  comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 95,000  to $ 261,000

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 3761 Warmbreeze Way Las Vegas, NV 89129-6879 | 3237 Indian Moon Drive AP #138-09-415-004 | | 8732 Western Saddle Avenue AP #138-08-715-022 | | 3908 Crema Court AP #138-09-515-010 | |
| Proximity to Subject | | 0.68 miles SE | | 0.76 miles SW | | 0.57 miles NE | |
| Sale Price | $ n/a | | $ 140,000 | | $ 155,000 | | $ 139,100 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 79.23 sq.ft. | | $ 84.61 sq.ft. | | $ 75.93 sq.ft. | |
| Data Source(s) | | Public Records/MLS#934342 | | Public Records/MLS#895165 | | Public Records/MLS#944185 | |
| Verification Source(s) | | Doc#20090817-01203/DOM:10 | | Doc#20090803-02817/DOM:131 | | Doc#20090613-03964/DOM:8 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Cash | | FHA | | FHA | |
| Concessions | | None Noted | | $5,827 to buyer | | None Noted | |
| Date of Sale/Time | | 06/17/2009 | -2,800 | 08/03/2009 | | 08/13/2009 | |
| Location | Resident. Street | Resident. Street | | Resident. Street | | Resident. Street | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 4,423 SF | 5,299 SF | -876 | 4,628 SF | | 4,480 SF | |
| View | Area/Average | Area/Average | | Area/Average | | Area/Average | |
| Design (Style) | 2Stry/Conv/Avg | 2Stry/Custom | | 2Stry/Conv/Avg | | 2Stry/Conv/Avg | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 1996 (13 yrs) | 1996 (13 yrs) | | 1998 (11 yrs) | -1,000 | 1998 (11 yrs) | -1,000 |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 7  3  2.5 | 7  3  2.5 | | 6  3  2.5 | | 6  3  2.5 | |
| Gross Living Area | 1,991 sq.ft. | 1,767 sq.ft. | +6,720 | 1,832 sq.ft. | +4,770 | 1,832 sq.ft. | +4,770 |
| Basement & Finished | None | None | | None | | None | |
| Rooms Below Grade | n/a | n/a | | n/a | | n/a | |
| Functional Utility | Good | Good | | Good | | Good | |
| Heating/Cooling | FAU/Central | FAU/Central | | FAU/Central | | FAU/Central | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 3 Gar, att | 3 Gar, att | | 2 Gar, att | +4,500 | 2 Gar, att | +4,500 |
| Porch/Patio/Deck | Porch/Patio | Porch/CovPatio | -2,000 | Porch/CovPatio | -2,000 | Porch/CovPatio | -2,000 |
| Landscaping | Minimal/FR/RR | Minimal/FR/RR | | Minimal/FR/RR | | Minimal/FR/RR | |
| Fireplaces | 1 Fireplace | 1 Fireplace | | 1 Fireplace | | No Fireplace | +1,500 |
| Pool/Spa | None | None | | Pool/Spa | -15,000 | None | |
| Net Adjustment (Total) | | ☒ + ☐ - $ | 1,044 | ☐ + ☒ - $ | -8,730 | ☒ + ☐ - $ | 7,770 |
| Adjusted Sale Price | | Net Adj. 0.7 % | | Net Adj. 5.6 % | | Net Adj. 5.6 % | |
| of Comparables | | Gross Adj. 8.9 % $ | 141,044 | Gross Adj. 17.6 % $ | 146,270 | Gross Adj. 9.9 % $ | 146,870 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   MLS / Public Records
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   MLS / Public Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No previous sales within the past 36 months. | Trustees Deed 05/07/2009 for $168,000 (doc#01945) | No previous sales within the past 36 months. | Trustees Deed 06/25/09 for $127,075 (doc#00377) |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | Public Records | MLS/Public Records | MLS/Public Records | MLS/Public Records |
| Effective Date of Data Source(s) | 08/24/2009 | 08/24/2009 | 08/24/2009 | 08/24/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales    No other sales or listings were noted for the subject property within the past 36 months.  Previous sales data for each of the comparable sales is noted below each of the sales.  There are some of the homes utilized within the sales grid that were noted to be relisted and currently back on the market.  The details of the listings were included in the previous sales history section.

Summary of Sales Comparison Approach    See "Additional Market Comment" on the attached addenda.  The appraiser was restricted to the limited number of recent sales that have occurred within the subject subdivision in the past 3 months and has selected the most recent and appropriate sales available with reasonable market supported adjustments considered within the sales grid.  The net and gross adjustment percentages are within recommended limits due to overall similarities between the subject and the comparable sales.  The lower end of the adjusted sales range was emphasized due to the fact that the market is declining 1.0 - 1.5% per month for the past 36 months.  The final indicated value is bracketed and well supported.

Indicated Value by Sales Comparison Approach $  145,000

Indicated Value by: Sales Comparison Approach $  145,000    Cost Approach (if developed) $  157,045    Income Approach (if developed) $
Although the Cost Approach supports the final estimate of value, most weight is given to the Sales Comparison Approach, that best reflects the actions of buyers and/or sellers in the marketplace.  Income Approach is not used, due to a lack of recent and reliable rental data.

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,  ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  This is a summary appraisal report. The subject is appraised "AS IS" per the request of the client.  The client requested that the appraisal be completed on Fannie Mae Form 1004.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $  145,000 , as of  08/24/2009 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005                Page 2 of 6                Fannie Mae Form 1004 March 2005

28

Main File No. NA209080605PRV Page #7

# Uniform Residential Appraisal Report

NA209080605PRV
File # NA209080605PRV

**ADDITIONAL COMMENTS**

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   The appraiser has used the extraction method where possible; however, it is important to note that throughout the Las Vegas Valley, individual parcels are not in adequate supply because most home construction occurs by builders that include the cost of the lot with each offered home.  Land sales in the area are noted to be $100,000 - $125,000 per 1/2 acre depending on views. There are however, sufficient parcels for sale in the area to determine a proper land value.

| ESTIMATED ☒ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ | 20,000 |
|---|---|---|---|---|
| Source of cost data  Marshall & Swift & Local Builders Data | DWELLING      1,991 Sq.Ft. @ $ | 62.00 | =$ | 123,442 |
| Quality rating from cost service  Avg       Effective date of cost data  2008 | n/a  Sq.Ft. @ $ | | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | CvdPor/Patio/CBWlls/Landscpn | | =$ | 12,000 |
| Cost factors based on local builders and/or Marshall & Swift information | Garage/Carport     621 Sq.Ft. @ $ | 43.00 | =$ | 26,703 |
| for square foot calculations (rounded).  Land/Improvement ratio is normal | Total Estimate of Cost-New | | =$ | 162,145 |
| for the area.  Depreciation determined by the overall condition of the unit | Less       Physical    Functional    External | | | |
| as related to normal wear and tear, and the average life expectancy of | Depreciation     28,100 | | =$( | 28,100) |
| similar residences in the surrounding area. | Depreciated Cost of Improvements | | =$ | 134,045 |
| | "As-is" Value of Site Improvements | | =$ | 3,000 |
| Estimated Remaining Economic Life (HUD and VA only)          62 Years | INDICATED VALUE BY COST APPROACH | | =$ | 157,045 |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $       n/a      X Gross Rent Multiplier      n/a     = $ | Indicated Value by Income Approach |
|---|---|

Summary of Income Approach (including support for market rent and GRM)

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☐ No    Unit type(s)  ☐ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes  ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source

Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

29

# Uniform Residential Appraisal Report

NA209080605PRV
File # NA209080605PRV

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.


30

## Uniform Residential Appraisal Report

NA209080605PRV
File # NA209080605PRV

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

31

## Uniform Residential Appraisal Report

NA209080605PRV
File # NA209080605PRV

The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Nathan P Sellers | Name |
| Company Name  Appraisal 2000 | Company Name |
| Company Address  2538 Vera Cruz Circle, Henderson, NV 89074 | Company Address |
| Telephone Number  (702) 597-5229 | Telephone Number |
| Email Address  appraisal2000@msn.com | Email Address |
| Date of Signature and Report  08/31/2009 | Date of Signature |
| Effective Date of Appraisal  08/24/2009 | State Certification # |
| State Certification # | or State License # |
| or State License #  NVA.0006817-RES | State |
| or Other (describe) _____ State # ____ | Expiration Date of Certification or License |
| State  NV | |
| Expiration Date of Certification or License  6/30/2010 | **SUBJECT PROPERTY** |
| | ☐ Did not inspect subject property |
| **ADDRESS OF PROPERTY APPRAISED** | ☐ Did inspect exterior of subject property from street |
| 3761 Warmbreeze Way | Date of Inspection |
| Las Vegas, NV 89129-6879 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $  145,000 | Date of Inspection |
| **LENDER/CLIENT** | |
| Name | **COMPARABLE SALES** |
| Company Name  Thomas, B K | |
| Company Address  3761 Warmbreeze Way, Las Vegas, NV 89129 | ☐ Did not inspect exterior of comparable sales from street |
| | ☐ Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection |

Freddie Mac Form 70 March 2005

Page 6 of 6

Fannie Mae Form 1004 March 2005

32

Main File No. NA209080605PRV Page #11

## Uniform Residential Appraisal Report

NA209080605PRV
File # NA209080605PRV

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 3761 Warmbreeze Way Las Vegas, NV 89129-8879 | 8308 Donatello Court AP #138-09-322-016 | | 3600 Warmbreeze Way AP #138-09-215-011 | | 8313 Valleybreeze Avenue AP #138-09-221-019 | |
| Proximity to Subject | | 0.34 miles S | | 0.16 miles SE | | 0.05 miles S | |
| Sale Price | $ n/a | $ | 147,000 | $ | 155,000 | $ | 159,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 78.23 sq.ft. | | $ 80.77 sq.ft. | | $ 82.38 sq.ft. | |
| Data Source(s) | | Public Records/MLS#939732 | | Public Records/MLS#933015 | | Public Records/MLS#813188 | |
| Verification Source(s) | | Doc#20090731-02124/DOM:20 | | Doc#20090714-04688/DOM:3 | | Doc#20090701-03929/DOM:282 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Conventional | | Conventional | | Conventional | |
| Concessions | | $4,420 to buyer | | None Noted | | $3,000 to buyer | |
| Date of Sale/Time | | 07/31/2009 | | 07/14/2009 | | 07/01/2009 | |
| Location | Resident. Street | Resident. Street | | Resident. Street | | Resident. Street | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 4,423 SF | 4,420 SF | | 4,927 SF | -504 | 4,342 SF | |
| View | Area/Average | Area/Average | | Area/Average | | Area/Average | |
| Design (Style) | 2Stry/Conv/Avg | 2Stry/Conv/Avg | | 2Stry/Custom | | 2Stry/Custom | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 1996 (13 yrs) | 1998 (11 yrs) | -1,000 | 1996 (13 yrs) | | 1997 (12 yrs) | -500 |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 7 3 2.5 | 7 4 2.5 | | 6 4 2.5 | | 7 3 2.5 | |
| Gross Living Area | 1,991 sq.ft. | 1,879 sq.ft. | +3,360 | 1,919 sq.ft. | +2,160 | 1,930 sq.ft. | +1,830 |
| Basement & Finished | None | None | | None | | None | |
| Rooms Below Grade | n/a | n/a | | n/a | | n/a | |
| Functional Utility | Good | Good | | Good | | Good | |
| Heating/Cooling | FAU/Central | FAU/Central | | FAU/Central | | FAU/Central | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 3 Gar, att | 2 Gar, att | +4,500 | 3 Gar, att | | 3 Gar, att | |
| Porch/Patio/Deck | Porch/Patio | Porch/Patio | | Porch/Patio | | Porch/CovPatio | -2,000 |
| Landscaping | Minimal/FR/RR | Minimal/FR/RR | | Minimal/FR/RR | | Minimal/FR/RR | |
| Fireplaces | 1 Fireplace | 1 Fireplace | | 3 Fireplace | -3,000 | 1 Fireplace | |
| Pool/Spa | None | None | | None | | None | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 6,860 | ☐ + ☒ - | $ -1,344 | ☐ + ☒ - | $ -670 |
| Adjusted Sale Price | | Net Adj. 4.7 % | | Net Adj. 0.9 % | | Net Adj. 0.4 % | |
| of Comparables | | Gross Adj. 6.0 % | $ 153,860 | Gross Adj. 3.7 % | $ 153,656 | Gross Adj. 2.7 % | $ 158,330 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No previous sales within the | Foreclosure sale on 4/27/09 | Trustees Deed 03/11/2009 | Recorded sale 09/2007 |
| Price of Prior Sale/Transfer | past 36 months. | for $100,000 (doc#04172) | for $138,512 (doc#03181) | for $269,900 |
| Data Source(s) | Public Records | MLS/Public Records | MLS/Public Records | MLS/Public Records |
| Effective Date of Data Source(s) | 08/24/2009 | 08/24/2009 | 08/24/2009 | 08/24/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

33

Main File No. NA209080805PRV Page #12

## Supplemental Addendum

File No. NA209080805PRV

| Borrower/Client | Thomas, B K | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 3761 Warmbreeze Way | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89129-6879 |
| Lender | Thomas, B K | | | | | | |

### SITE COMMENTS

The general topography of the subject property is level, with the subject's built-up/engineered pad noted to have a slight (downward) contour around the perimeter of the dwelling and a sufficient overhand along the roof line, as to assist in drainage and/or diverting water away from the structure/improvements. Typical of the area, the slight gradient is not noted to affect the usability and/or utility of the site area. The subject property is a larger lot in size for the neighborhood. The dimensions of the lot are approximate measurements according to the subdivision plat map and as indicated on public records. The subject lot is a level lot with typical views of the surrounding area.

Exterior on-site improvements noted upon inspection, include: large concrete paver driveway , covered porch, open patio, and decorative landscaping, concrete block side and rear perimeter walls surrounding the rear yard of the home.

The subject's title report was not viewed.

### ADDITIONAL FEATURES

The subject's two-level tract home noted to have tile entryway, elevated ceilings, fireplace in the living room, media niche in the great room, large open kitchen with tile countertops; 1/2 bath on the main level; 2nd level is noted to have 3 bedrooms and 2 bathrooms with an additional large loft/bonus room 19'x 16' in size. The bathroom finishes are noted to be average and all plumbing fixtures appear to be in working order.

### DEPRECIATION COMMENTS

The subject property is considered to be in 'Average' overall condition. Physical Depreciation was considered using the 'age-life' method. The subject's remaining economic life is estimated to be 60-65 years. No external or functional depreciation noted. Although the Cost Approach was included, the appraiser gave no emphasis to this as it is not applicable given the assignment type and request for a 'market value' appraisal report.

### COMMENTS ON THE SALES COMPARISON ANALYSIS

A comprehensive search was performed to find the most recent sales of similar and/or match type properties to that of the subject residence. In the selection process, careful consideration was given to location, neighborhood amenities, age, quality of construction and living area. The recited comparables are the most recent sales in the "market" area and considered to be the most representative of the subject "market".

Data for the Sales Comparison Analysis was obtained through the use of the local Multiple Listing Service (MLS), Tax Star, Transamerica Intellitech, Inc. (MetroScan), Title companies, Realtors, Sales Associates and/or office files. - Should any error or omission be subsequently discovered, this appraiser reserves the right to modify the report.

The following appraisal methods and techniques were utilized in arriving at the Final Estimate of Value:

A. All available data sources were researched for comparable sales, economic trends, physical conditions which have or might have an adverse impact upon the subject property, and other information pertinent in this appraisal.

B. A physical inspection of the subject property was performed. Observations of physical condition and functional obsolescence were taken into consideration and a sketch of the improvements was made.

C. An exterior inspection of the comparable properties was made and three or more were selected as being most similar to the subject property and utilized as comparable sales.

D. A detailed review and analysis of all pertinent data was made and a final opinion of value was determined.

E. The report and all pertinent exhibits and addenda were prepared and transmitted to the client.

### ADDITIONAL MARKET COMMENTS

Per the Greater Las Vegas MLS, the number of available or listed properties in the single family housing market has increased since this time leading to a stabilizing period - resulting in a increased supply of available listings. The market has experienced over 30 months of declining values. For this reason the appraiser has used sales that are less than 2 months old and emphasized those sales which indicate good representatives of the subject in the marketplace. The appraiser has also included a detailed list of the most recent sales activity within a 1.0 mile perimeter.

There is an extremely limited number of recent home resales within the area with similar 3 car garage count. The appraiser has included three sales with 3 car garages and three sales with 2 car garages. All sales included are within the recommended one mile radius and include include homes with similar features, living area, and age. The sales were limited to the Greater Las Vegas MLS and those attained and confirmed within public records.

All comparables are from the subject's "market" area and are deemed to be the most recent and reliable representatives of that market. Individual comments for each comparable sale are noted per the MLS sheet on the appropriate comparable photo pages.

All sales are custom single family homes considered to be in similar 'average' condition and present good/accurate

34

Main File No. NA209080605PRV1 Page #13

### Supplemental Addendum

File No. NA209080605PRV

| Borrower/Client | Thomas, B K | | | | |
|---|---|---|---|---|---|
| Property Address | 3761 Warmbreeze Way | | | | |
| City | Las Vegas | County | Clark | State  NV | Zip Code  89129-8879 |
| Lender | Thomas, B K | | | | |

values for the subject market area. There are other similar size homes within the subject development however, very few of the homes have sold within the past year. Due to the newer age of the development, there is an extremely limited number (2) of sales that have occurred within the subject subdivision within the past year. The included sales are considered to be the best representatives of the subject property and best indicators of value.

This information is included for secondary support and not as primary source of value determination. For final value conclusion determination, please see 'Final Value Conclusion' commentary below.

Comparables Summary & Estimated Indicated Value

| | Sale Price | Grs Adj % | Ind Value | Weight |
|---|---|---|---|---|
| Comp #1: | 140,000 | 6.2286 | 144,720 | 17.2802 |
| Comp #2: | 155,000 | 17.5936 | 146,270 | 12.3174 |
| Comp #3: | 139,100 | 9.9894 | 146,870 | 15.8772 |
| Comp #4: | 147,000 | 6.0272 | 153,860 | 17.3681 |
| Comp #5: | 155,000 | 3.329 | 154,160 | 18.5463 |
| Comp #6: | 159,000 | 2.7233 | 158,330 | 18.8108 |

ESTIMATED INDICATED VALUE OF THE SUBJECT                     : $151,146
**INDICATED VALUE OF THE SUBJECT**                              : $145,000

Estimated indicated value is determined by using the Gross Adjustment of sale price for each comparable as a measure of the relative quality of the comp. A lower adjustment indicates a better comp, and vice versa. The ratio of gross dollar adjustment to sale price for each of the comps is used to calculate the weight each comp should have in a weighted average calculation. This weighted average is used as the indicated value of the subject.

The appraiser has emphasized the lower end of  the adjusted sales range in determining the indicated value because of the declining market.

All adjustments were either extracted from the market using paired sales or they were based on depreciated cost figures provided by the Marshall & Swift Residential Cost Handbook. Adjustments were made for differences in lot size, location and views, square footage, bath count, garage count, exterior site amenities (covered patios, etc.), landscaping and interior upgrades.

The appraiser has included MLS photos as part of the reporting process. These photos were included for additional reference and information. The use of these photos is more accurate and descriptive of the property condition and amenities at the time of it's sale.

After review of a market analysis for the subject property, some (improvement) variances were minimized due to conformity and preference, and/or no significant changes in value were noted for differences in financing type, location, fireplaces, and/or roof coverings; thus, no adjustments were made  within the Sales Comparison Analysis.

Financing options include partial seller financing at rates similar to conventional rates and up to 3.0 seller paid points towards non-recurring closing costs without an apparently measurable market impact on sales prices.

### SCOPE OF THE APPRAISAL

The following steps were followed in arriving at the final value estimate included in this report assembly of the subject property:

1) After receiving the assignment, a preliminary search of all resources customary to the appraisal of residential real estate was made to determine general market trends, influences and other significant factors pertinent to the subject property.

2) A physical inspection of the property was performed. Although due diligence was exercised while at the subject property, the Appraiser is not an expert in such matters as pest control, structural engineering, hazardous waste, etc. No warranty is given relating to the presence of these elements and their effect, if any, on the value of the subject property except as otherwise noted. As needed, inspections by various professionals within these fields might be recommended with the final value estimate subject to their findings.

3) A second review of the data was then performed with the most relevant factors extracted and considered. Sales were examined and discussed with parties involved in the transactions or from public record or other sources as deemed reliable. Market factors were weighted and their influence on the subject property estimated.

4) The appraisal report was then delivered to the client on August 31, 2009 which constituted completion of the assignment. The effective date of this appraisal is the date the subject property was inspected, August 24, 2009. The appraisal report was prepared at the request of the client as noted in this report.

### MARKET VALUE

The appraisal is based upon the definition of fair market value as set forth in Section 34.42 (f) of the office of the comptroller (OCC) and the uniform standards of professional appraisal practice. Market value is defined by all five federal agencies and the RTC.

35

Main File No. NA209080605PRV | Page #14

**Supplemental Addendum**

File No. NA209080605PRV

| | |
|---|---|
| Borrower/Client | Thomas, B K |
| Property Address | 3761 Warmbreeze Way |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89129-6879 |
| Lender | Thomas, B K |

Informed entities viewing this report should understand the relationship between the accounting term "fair value" and the appraisal term "market value" and be in a position to clarify the use of these terms for their common clients.

**WARRANTIES AND INDEMNITY**

Appraiser does not make any warranties or guarantees of any kind regarding the condition of the property, sufficiency of title, areas and boundaries, mechanical and structural conditions of the improvements, and with the agreement that the Appraisal Report represents Appraiser's opinion of value only, without any warranty that the property will sell for the appraised value. Client agrees to indemnify Appraiser, his employees, and independent contractors from all claims, suits, and charges of any nature that may arise out of this agreement.

Notice: errors and omissions will be corrected in all original signed copies if reported in a written request to the appraiser.

**FINAL VALUE CONCLUSIONS**

All of the comparables were given consideration and weight in the valuation process. All of the comparables are located within the same general market area as the subject. Adjustments were based upon the estimated market reaction for the significant differences and do not include every difference. The Market Approach is still the most reliable approach available to the appraiser and will remit in a reasonable value estimate.

**ENVIRONMENTAL DISCLOSURE**

The appraiser is not a home or environmental inspector. The appraiser provides an opinion of value. The appraisal does not guarantee that the property is free of defects or environmental problems. The appraiser performs an inspection of visible and accessible areas only. Mold may be present in areas the appraiser cannot see. If further concern exists, then a professional home inspection or environmental inspection is recommended.

No environmental assessment for the subject site or neighborhood was undertaken. The existence of hazardous substances, including Asbestos, Molds, Polychlorinated Biphenyl's, petroleum leakage or agricultural chemicals is not known to be present on the subject site. The site inspection did not reveal any signs, which would reveal such conditions. The appraiser has no knowledge of the existence of such materials on or in the property unless otherwise stated. Further, the appraiser is not qualified to test such substances as stated above. If the presence of such substances such as Asbestos, Urea Formaldehyde, foam insulation, etc. are present, the value of the property may be affected. The value estimated is predicted on the assumption that there is no such condition on or in the property or in proximity to the subject that would cause a loss in value. No responsibility is assumed for any conditions or for my expertise or engineering knowledge required to discover them. The client is urged to retain an expert in the field of environmental impacts upon real estate should them be any questions regarding this matter.

**APPRAISAL DISPUTES**

The appraiser has completed this report to the best of his professional ability and reserves the right to change/modify this report without contest. Any dispute that may arise regarding the indicated value and/or the selection of available sales and/or request for additional sales and/or rebuttal from desk or field reviews as a result of this report and/or significant modifications regarding the Comparable Sales Analysis, may require an additional fee and documentation of disputing evidence.

The appraiser will not address undocumented/hasty generalizations or 'opinions' developed by individuals who may be familiar with the appraisal process but are not experienced or 'localized' with the Las Vegas market or who have limited information restricted to 'public information' only.

The appraiser is well educated in the appraisal process and has supported documentation/justification to support the appraisal process and the final value derived from the appraisal process. Therefore, the appraiser is not responsible/liable for additional changes or modifications for those items/reasons listed above. The appraiser liable for the delay as a result of any review or additional requirements requested by the client.

**DIGITAL SIGNATURE DISCLOSURE**

This appraisal report was digitally signed with direct authorization and control of the appraiser. The signature is authorized exclusively by Nathan P. Sellers. The digital signatures carry the same level of authenticity as an ink signature.

36

## Current Sales and Listings within the Subject's Immediate Area

| Borrower/Client | Thomas, B K | | | | |
|---|---|---|---|---|---|
| Property Address | 3761 Warmbreeze Way | | | | |
| City | Las Vegas | County  Clark | State  NV | Zip Code  89129-6879 |
| Lender | Thomas, B K | | | | |

Listed below are the single family units within the area that were noted to be located within 1.0 miles of the subject property.
Data acquired from Las Vegas MLS (08/24/2009).
ER - LISTING; EA- LISTING; P - PENDING SALE; C - CONTINGENT SALE; S - CLOSED SALE

Columns: GLVAR RES Standard Grid      Filter: Show all      Status: All

| # | P | | MLS # | Ar | St | Address | ListPrice | SalePrice | BldgDesc | Sub | Bd | Bths Tot | SqFt | Gr | Pl | Spa | YrBlt | LISP | ActClose | DOM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | ☐ | | 939437 | 405 | S | 9411 LOST GOLD AV | 115,000 | 120,000 | 2STORY | SFR | 2 | 2 | 1725 | 2 | N | N | 2002 | 6041 | 08/28/2009 | 40 |
| 2 | ☐ | | 936731 | 405 | S | 8127 LAST POINT AV | 185,000 | 186,000 | 2STORY | SFR | 3 | 3 | 2178 | 2 | Y | N | 1999 | 3995 | 08/25/2009 | 29 |
| 3 | ☐ | | 889947 | 405 | S | 3970 SILVER STRIKE CT | 128,000 | 123,000 | 2STORY | SFR | 3 | 2 | 1574 | 2 | N | N | 2003 | 3455 | 08/21/2009 | 217 |
| 4 | ☐ | | 949463 | 405 | S | 8023 HURRICANE COVE CT | 119,990 | 119,000 | 2STORY | SFR | 4 | 2 | 1824 | 2 | N | N | 1995 | 4200 | 08/21/2009 | 0 |
| 5 | ☐ | | 951691 | 405 | S | 8716 HARWICH AV | 99,900 | 91,000 | 2STORY | SFR | 3 | 2 | 1521 | 2 | N | N | 1995 | 1702 | 08/21/2009 | 27 |
| 6 | ☐ | | 954362 | 405 | S | 8252 TEN GALLON CT | 90,535 | 95,000 | 2STORY | SFR | 4 | 2 | 1662 | 2 | N | N | 1996 | 3532 | 08/19/2009 | 0 |
| 7 | ☑ | | 944155 | 405 | S | 3308 CREVA CT | 114,900 | 129,100 | 2STORY | SFR | 3 | 3 | 1832 | 2 | N | N | 1998 | 4460 | 08/13/2009 | 8 |
| 8 | ☐ | | 944826 | 405 | S | 8717 COUNTRY PINES AV | 162,000 | 175,000 | 2STORY | SFR | 3 | 3 | 1909 | 2 | Y | N | 1997 | 3992 | 08/10/2009 | 1 |
| 9 | ☑ | | 936165 | 405 | S | 8732 WESTERN SADDLE AV | 129,930 | 155,000 | 2STORY | SFR | 3 | 3 | 1770 | 2 | Y | N | 1996 | 4226 | 08/03/2009 | 121 |
| 10 | ☑ | | 939722 | 405 | S | 6200 DONATELLO CT | 149,990 | 147,000 | 2STORY | SFR | 4 | 2 | 1879 | 2 | N | N | 1998 | 4420 | 07/31/2009 | 20 |
| 11 | ☐ | | 936048 | 405 | S | 7804 WINTERTHUR CT | 114,990 | 140,000 | 2STORY | SFR | 3 | 2 | 1764 | 2 | N | N | 2005 | 5227 | 07/29/2009 | 0 |
| 12 | ☐ | | 904403 | 405 | S | 8129 VALLEY OF FIRE AV | 110,000 | 95,000 | 2STORY | SFR | 2 | 2 | 1712 | 2 | N | N | 1996 | 5498 | 07/29/2009 | 173 |
| 13 | ☐ | | 924167 | 405 | S | 3934 COHOUGH LN | 123,000 | 112,500 | 2STORY | SFR | 2 | 3 | 1832 | 2 | N | N | 1998 | 4977 | 07/27/2009 | 22 |
| 14 | ☐ | | 946242 | 405 | S | 7941 W GILMORE AV | 99,900 | 97,000 | 2STORY | SFR | 2 | 3 | 1778 | 2 | N | N | 1994 | 4160 | 07/23/2009 | 3 |
| 15 | ☐ | | 944504 | 405 | S | 8736 HARVEST VALLEY AV | 112,512 | 111,000 | 2STORY | SFR | 3 | 2 | 1513 | 2 | N | N | 1998 | 4000 | 07/20/2009 | 20 |
| 16 | ☐ | | 910891 | 405 | S | 3249 CHELTENHAM ST | 128,500 | 110,000 | 2STORY | SFR | 3 | 3 | 1621 | 2 | N | N | 1998 | 2214 | 07/17/2009 | 82 |
| 17 | ☐ | | 924210 | 405 | S | 3701 HARWICH AV | 110,000 | 110,000 | 2STORY | SFR | 2 | 3 | 1621 | 2 | N | N | 1995 | 1800 | 07/15/2009 | 108 |
| 18 | ☐ | | 923018 | 405 | S | 3660 WAUBEEKEE WY | 140,580 | 155,000 | 2STORY | SFR | 4 | 3 | 1919 | 2 | N | N | 1995 | 4527 | 07/14/2009 | 5 |
| 19 | ☐ | | 937596 | 403 | S | 3012 ANCHOR CHAIN DR | 129,900 | 122,100 | 2STORY | SFR | 3 | 3 | 1641 | 2 | N | N | 1995 | 4500 | 07/08/2009 | 5 |
| 20 | ☐ | | 865149 | 405 | S | 3962 COVE COVE DR | 149,900 | 147,000 | 2STORY | SFR | 3 | 3 | 1944 | 2 | Y | N | 1994 | 4250 | 07/07/2009 | 132 |
| 21 | ☐ | | 935763 | 405 | S | 3470 WHITE MISSION DR | 115,900 | 123,000 | 2STORY | SFR | 3 | 2 | 1834 | 2 | N | N | 1994 | 2546 | 07/07/2009 | 141 |
| 22 | ☐ | | 930223 | 405 | S | 7716 ALLIANCE ST | 179,900 | 170,000 | 2STORY | SFR | 4 | 3 | 2123 | 2 | N | N | 1995 | 4000 | 06/30/2009 | 8 |
| 23 | ☐ | | 931432 | 405 | S | 7812 HOWARD DADE AV | 169,500 | 158,000 | 2STORY | SFR | 3 | 3 | 2065 | 2 | N | N | 1995 | 4300 | 06/29/2009 | 28 |

37

Main File No. NA209080605PRVI Page #16

## Site Map

| Borrower/Client | Thomas, B K | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 3761 Warmbreeze Way | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89129-6879 |
| Lender | Thomas, B K | | | | | | |



38

Main File No. NA209080805PRV/ Page #17

## Plat Map

| Borrower/Client | Thomas, B K | | | | |
|---|---|---|---|---|---|
| Property Address | 3761 Warmbreeze Way | | | | |
| City | Las Vegas | County Clark | | State NV | Zip Code 89129-8879 |
| Lender | Thomas, B K | | | | |



**Subject
3761 Warmbreeze Way**

39

Main File No. NA209C80605PRV1 Page # 18

**Flood Zone Map**

| Borrower/Client | Thomas, B K | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3761 Warmbreeze Way | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code 89129-6879 |
| Lender | Thomas, B K | | | | | |



View Printer-Friendly Map

The District makes no warranties concerning the accuracy of this data.  View Disclaimer

**This parcel IS NOT in a 100-year flood zone.**

| | |
|---|---|
| *Parcel* | 13809221032 |
| *Owner* | THOMAS BRIAN K & RHAYNE M |
| *Address* | 3761 WARMBREEZE |
| *Entity* | Las Vegas |
| *Contact* | 702-229-6569 |
| *Flood Zone* | This parcel IS NOT in a 100-year flood zone. |
| *FIRM Panel* | View FIRM Panel (2135) |
| *LOMR* | This parcel is not affected by a LOMR |

40

Main File No. NA209080605PRVI Page #19

**Building Sketch**

| Borrower/Client | Thomas, B K | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3761 Warmbreeze Way | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code 89129-6879 |
| Lender | Thomas, B K | | | | | |



Sketch by Apex IV™

Main File No. NA209080605PRVI Page #20

## Building Sketch

| Borrower/Client | Thomas, B K | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3761 Warmbreeze Way | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code 89129-8879 |
| Lender | Thomas, B K | | | | | |

### AREA CALCULATIONS SUMMARY

| Code | Description | Net Size | Net Totals |
|---|---|---|---|
| GLA1 | First Floor | 933.6 | 933.6 |
| GLA2 | Second Floor | 1057.5 | 1057.5 |
| GAR | Garage | 620.7 | 620.7 |

| | | | |
|---|---|---|---|
| Net LIVABLE Area | (Rounded) | | 1991 |

### LIVING AREA BREAKDOWN

| Breakdown | | | Subtotals |
|---|---|---|---|
| **First Floor** | | | |
| | 6.6 x | 24.4 | 161.0 |
| 0.5 x | 4.6 x | 4.6 | 10.6 |
| | 2.0 x | 4.6 | 9.2 |
| | 5.4 x | 24.4 | 131.9 |
| | 23.0 x | 27.0 | 621.0 |
| **Second Floor** | | | |
| 0.5 x | 3.0 x | 3.0 | 4.5 |
| | 14.0 x | 42.0 | 588.0 |
| | 8.0 x | 17.0 | 136.0 |
| | 16.0 x | 17.0 | 272.0 |
| | 3.0 x | 19.0 | 57.0 |

| | | | |
|---|---|---|---|
| 10 Items | (Rounded) | | 1991 |

### First Floor — GLA1

| | | | | |
|---|---|---|---|---|
| | 6.6 x | 24.4 | = | 161.0 |
| 0.5 x | 4.6 x | 4.6 | = | 10.6 |
| | 2.0 x | 4.6 | = | 9.2 |
| | 5.4 x | 24.4 | = | 131.9 |
| | 23.0 x | 27.0 | = | 621.0 |

Area total (Rounded)  =  934

### Garage — GAR

| | | | | |
|---|---|---|---|---|
| 0.5 x | 5.0 x | 5.3 | = | 13.3 |
| | 5.3 x | 7.0 | = | 37.1 |
| | 12.0 x | 16.7 | = | 200.4 |
| | 2.0 x | 5.0 | = | 10.0 |
| | 18.0 x | 20.0 | = | 360.0 |

Area total (Rounded)  =  621

### Second Floor — GLA2

| | | | | |
|---|---|---|---|---|
| 0.5 x | 3.0 x | 3.0 | = | 4.5 |
| | 14.0 x | 42.0 | = | 588.0 |
| | 8.0 x | 17.0 | = | 136.0 |
| | 16.0 x | 17.0 | = | 272.0 |
| | 3.0 x | 19.0 | = | 57.0 |

Area total (Rounded)  =  1058

42

Main File No. NA209080605PRV| Page #21

## Location Map

| Borrower/Client | Thomas, B K | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 3761 Warmbreeze Way | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89129-6879 |
| Lender | Thomas, B K | | | | | | |



Main File No. NA209080605PRVI Page #22

## Subject Photo Page

| Borrower/Client | Thomas, B K | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3761 Warmbreeze Way | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code 89129-6879 |
| Lender | Thomas, B K | | | | | |



**Subject Front**

3761 Warmbreeze Way

| Sales Price | n/a |
|---|---|
| G.L.A. | 1,991 |
| Tot. Rooms | 7 |
| Tot. Bedrms. | 3 |
| Tot. Bathrms. | 2.5 |
| Location | Resident. Street |
| View | Area/Average |
| Site | 4,423 SF |
| Quality | Average |
| Age | 1996 (13 yrs) |



**Subject Rear**



**Subject Street**

44

Main File No. NA209080605PRVI Page #23

### Photograph Addendum

| Borrower/Client | Thomas, B K | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 3761 Warmbreeze Way | | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89129-6879 |
| Lender | Thomas, B K | | | | | | |



**Side View**



**Side View**



**Rear Yard**



**Kitchen**



**Kitchen**



**Fireplace**

45

Main File No. NA209080605PRV| Page #24

### Photograph Addendum

| Borrower/Client | Thomas, B K | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3761 Warmbreeze Way | | | | | |
| City | Las Vegas | | County | Clark | State | NV | Zip Code | 89129-6879 |
| Lender | Thomas, B K | | | | | |



**Main Bathroom**



**Main Bathroom**



**Bathroom**



**Bathroom**

46

## Comparable Photo Page

| Borrower/Client | Thomas, B K | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3761 Warmbreeze Way | | | | | |
| City | Las Vegas | | County | Clark | State | NV | Zip Code | 89129-6879 |
| Lender | Thomas, B K | | | | | |



### Comparable 1

3237 Indian Moon Drive
Prox. to Subj. 0.66 miles SE
Sales Price    140,000
G.L.A.    1,767
Tot. Rooms    7
Tot. Bedrms.    3
Tot. Bathrms.    2.5
Location    Resident. Street
View    Area/Average
Site    5,299 SF
Quality    Average
Age    1996 (13 yrs)



### Comparable 2

8732 Western Saddle Avenue
Prox. to Subj. 0.76 miles SW
Sales Price    155,000
G.L.A.    1,832
Tot. Rooms    6
Tot. Bedrms.    3
Tot. Bathrms.    2.5
Location    Resident. Street
View    Area/Average
Site    4,628 SF
Quality    Average
Age    1998 (11 yrs)



### Comparable 3

3908 Crema Court
Prox. to Subj. 0.57 miles NE
Sales Price    139,100
G.L.A.    1,832
Tot. Rooms    6
Tot. Bedrms.    3
Tot. Bathrms.    2.5
Location    Resident. Street
View    Area/Average
Site    4,480 SF
Quality    Average
Age    1998 (11 yrs)

47

Main File No. NA209080605PRVI Page #26

## Comparable Photo Page

| Borrower/Client | Thomas, B K | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3761 Warmbreeze Way | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code 89129-6679 |
| Lender | Thomas, B K | | | | | |



**Comparable 4**

8308 Donatello Court
Prox. to Subj.  0.34 miles S
Sales Price  147,000
G.L.A.  1,879
Tot. Rooms  7
Tot. Bedrms.  4
Tot. Bathrms.  2.5
Location  Resident. Street
View  Area/Average
Site  4,420 SF
Quality  Average
Age  1998 (11 yrs)



**Comparable 5**

3600 Warmbreeze Way
Prox. to Subj.  0.16 miles SE
Sales Price  155,000
G.L.A.  1,919
Tot. Rooms  6
Tot. Bedrms.  4
Tot. Bathrms.  2.5
Location  Resident. Street
View  Area/Average
Site  4,927 SF
Quality  Average
Age  1996 (13 yrs)



**Comparable 6**

8313 Valleybreeze Avenue
Prox. to Subj.  0.05 miles S
Sales Price  159,000
G.L.A.  1,930
Tot. Rooms  7
Tot. Bedrms.  3
Tot. Bathrms.  2.5
Location  Resident. Street
View  Area/Average
Site  4,342 SF
Quality  Average
Age  1997 (12 yrs)

48

1    Steven A. Alpert                                        Efiled: October 14, 2009
     Bar No. 8353
2    Price Law Group, APC
     1350 E. Flamingo Rd. Ste 15A
3    Las Vegas, NV 89119
     (800) 884-6000 (Tel)
4    (702)794-2009 (Fax)

5

6                     UNITED STATES BANKRUPTCY COURT

7                            DISTRICT OF NEVADA

8        IN RE:                        )    Case no: 09-27642-lbr
                                       )    Chapter 13
9        BRIAN & RHAYNE THOMAS,        )
                                       )
10                                     )
                        Debtors        )    CERTIFICATE OF SERVICE
11                                     )
                                       )
12                                     )
                                       )
13       ------------------------------)

14   I do hereby certify under penalty of perjury that on October 14, 2009, I served copies of

15

16   **MOTION FOR ORDERS DETERMINING VALUE OF REAL PROPERTY, EXTENT OF SECURED CLAIMS**
     **AND EXTINGUISHING THE LIEN OF WELLS FARGO BANK, N.A.; MEMORANDUM OF POINTS AND**
17                    **AUTHORITIES; DECLARATION IN SUPPPORT**

18   enclosing said copies in sealed envelopes upon which first –class postage was fully prepaid, addressed to

19   the following persons; and that there is a regular communication by mail between the place of mailing

20   and the places so addressed:

21                         SEE ATTACHED SERVICE LIST

22

23   Dated: October 14, 2009

24                                      Lidia Ramirez, an employee of Price Law
                                        Group, APC
25

26

27

28

                                        -1-

1

## SERVICE LIST

2

**CHAPTER 13 TRUSTEE**

3

Kathleen A. Leavitt
201 Las Vegas Blvd South, Ste. 200

4

Las Vegas, NV 89101

5

**DEBTOR**

6

Brian & Rhayne Thomas
3761 Warmbreeze Way

7

Las Vegas, NV 89129

8

**CREDITOR**

9

Wells Fargo Home Mortgage Inc
P O Box 10335
Des Moines IA 50306-0335

10

11

Cara K. Heiden, Co-President
Wells Fargo Home Mortgage Inc

12

405 SW 5th St.
Des Moines, IA 50309

13

Wells Fargo Bank, N.A.

14

PO Box 4233
Portland, OR 97208-4233

15

16

**VIA CERTIFIED MAIL**

John Stumpf, CEO

17

Wells Fargo Bank, N.A.
90 S. 7th Street

18

MAC:N9305-173
Minneapolis, MN 55402

19

20

**AGENT FOR SERVICE OF PROCESS FOR:**
**WELLS FARGO BANK, N.A.**

21

CSC – Lawyers Incorporating Service

22

2730 Gateway Oaks Drive, Suite 100
Sacramento, CA 95833

23

**REQUEST FOR SPECIAL SERVICE**

24

Ascension Capital Group, Inc.
Attn: Capital One Auto Finance Department

25

P.O. Box 201347
Arlington, TX 76006

26

27

McCarthy & Holthus, LLP
811 South Sixth Street

28

Las Vegas, NV 89101