1  Steven A. Alpert (SBN 8353)
   Price Law Group, APC
2  1350 East Flamingo Road, Suite 15a
   Las Vegas, NV 89119
3  (702) 794-2008 Telephone
   (702) 794-2009 Facsimile
4
   Attorney for Debtors,
5  Brian Keith Thomas and Rhayne Marcella Thomas

6

7

8                    UNITED STATES BANKRUPTCY COURT

9                         DISTRICT OF NEVADA

10

11   In re:                          Case No: 09-27642-lbr

12                                    Chapter 13

13                                    MOTION FOR ORDERS DETERMINING
                                      VALUE OF REAL PROPERTY, EXTENT
14   BRIAN KEITH THOMAS &             OF SECURED CLAIMS AND
                                      EXTINGUISHING THE LIEN OF
15   RHAYNE MARCELLA THOMAS,          SELECT PORTFOLIO SERVICING,
                                      INC.; MEMORANDUM OF POINTS AND
16                                    AUTHORITIES; DECLARATION IN
                                      SUPPORT
17
                                      Hearing Information
18                                    Date:  November 19, 2009
                                      Time:  2:30 P.M.
19                                    Ctrm:  1
                  Debtors.           Place: 300 Las Vegas Blvd.
20                                    South, Las Vegas, NV 89101

21

22

23

24   TO THE HONORABLE LINDA B. RIEGLE, UNITED STATES BANKRUPTCY JUDGE;

25   SELECT PORTFOLIO SERVICING, INC.; CHAPTER 13 TRUSTEE; AND ALL OTHER

26   INTERESTED PARTIES:

27

28

                                    -4-

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**<u>BACKGROUND FACTS</u>**

Debtors BRIAN KEITH THOMAS & RHAYNE MARCELLA THOMAS ("Debtors") filed this Chapter 13 case on September 22, 2009.  Debtors owned and used as rental property a single family residence located at 3533 Sweden Street, Las Vegas, Nevada 89129(the "Real Property"). According to the declaration of the Debtor and the appraiser, the Real Property had a value of $125,000.00, see **Exhibit "3".** On the date of filing, the first deed of trust encumbered the Real Property in favor of America's Servicing Company ("ASC").  A true and correct copy of Current Loan Information reflecting a total principle balance of $219,935.83 as of February 1, 2009 is attached hereto and is incorporated by reference as **Exhibit "1".**  A second deed of trust encumbered the Real Property in favor of SELECT PORTFOLIO SERVICING, INC. ("RESPONDENT").  A true and correct copy of RESPONDENT's My Home Loan Loan Activity reflecting a total principle balance of $40,708.93 as of September 30, 2009 is attached hereto and is incorporated by reference as **Exhibit "2".**

**II.**

**<u>AUTHORITIES</u>**

**THE DECLARATION OF THE DEBTORS SHOWS THAT THE VALUE OF THE REAL PROPERTY WAS $125,000.00 AS OF THE TIME OF FILING.**

Pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedure (hereinafter "FRBP"), "[t]he court may determine the value of a claim secured by a lien on property in which the estate has an interest, on motion of any party in interest and after a hearing on

1  notice to the holder of the secured claim and any other entity as the

2  court may direct ..."

3      In this case, Debtors have provided the Court with a sworn

4  declaration stating that the market value of the Real Property was

5  $125,000.00 as of the time of filing.  The Debtors have knowledge of

6  what homes in their area, and their rental property in particular,

7  are worth.  Accordingly, Debtors request that the Court determine the

8  value of the Real Property to be $125,000.00.

9      **GIVEN THE VALUE OF THE REAL PROPERTY, THE FIRST DEED OF TRUST IS**

10  **UNDERSECURED AND THE SECOND DEED OF TRUST IS WHOLLY UNSECURED.**

11      FRBP 3012 implements Section 506(a) of the Bankruptcy Code with

12  respect to valuation of a secured claim in order to determine the

13  extent to which it is secured and the extent to which it is

14  unsecured.  Section 506(a) provides:

15      "[a]n allowed claim of a creditor secured by a lien on

16      property in which the estate has an interest,... is a secured

17      claim to the extent of the value of such creditor's

18      interest in the estate's interest in such property,... and is

19      an unsecured claim to the extent that the value of such

20      creditor's interest ... is less than the amount of such

21      allowed claim."

22      Additionally, section 506(d) states that, "[t]o the extent that

23  a lien secures a claim against the debtor that it is not an allowed

24  secured claim, such lien is void."

25      Section 506 is a section of general applicability and a Chapter

26  13 case allows bifurcation of a claim into secured and unsecured

27  portions.  <u>Wilson v. Commonwealth Mortgage Corp.</u>, 895 F.2d 123, 22

28  C.B.C. 561 (3rd Cir. 1990).

**AS A WHOLLY UNSECURED LIENHOLDER, RESPONDENT'S RIGHTS MAY BE MODIFIED UNDER 11 U.S.C. §1322(B)(2) AND IT MAY BE TREATED AS AN UNSECURED CREDITOR.**

Many courts, even prior to the passage of the BAPCPA of 2005, had already held that Nobleman v. American Savings Bank, 13 S.Ct. 2106 (1993) was inapplicable when senior liens were in excess of the fair market value of the property. Therefore, the instant case would fall outside the protection otherwise afforded by Nobleman, because claimant's lien is wholly unsecured.

The passage of the Bankruptcy Reform Act of 1994 did not change the ability of lien stripping of a wholly unsecured creditor. It merely provided that a loan which fully matured prior to the filing of the Chapter 13 petition, or a loan which matures during the life of the plan, may be paid through the plan. 11 U.S.C. §1322(b)(2).

Under Nobleman, a lien cannot be stripped if any portion of the interest was secured. Thus, by implication, when a lien is wholly unsecured, it can be stripped. Courts have consistently distinguished between Nobleman and facts involving a wholly unsecured lien holder. In fact, most reported decisions have rejected the proposition that Nobleman prohibits modification of a totally unsecured lien on a chapter 13 debtor's principal residence. These Courts, along with the 9th Circuit Bankruptcy Appellate Panel, interpret Nobleman to require the existence of an allowable secured claim as the predicate for the protection form modification in 11 U.S.C. §1322(b)(2).

In the 9th Circuit Bankruptcy Appellate Panel Case, In re Lam, the Court held that:
> "The Nobleman decision holding that section 1322(b) bars a chapter 13 plan from modifying the rights of holders of claims,

secured only by the debtor's principal residence, does not apply to holders of totally unsecured claims.   The extension of the protections of section 1322(b) to wholly unsecured lien holders is contrary to the provisions of the bankruptcy code allowing dischargeability of unsecured claims."

In In re Lam, 121 B.R. 36, 41 (9th Cir. B.A.P. 1997), the Court concurred with the holding of several cases that permitted modification of secured creditor's claims that were wholly unsecured. Id., at 41.

Yet another California case has a similar holding to In re Lam. The Court in In re Geyer sustained a debtor's motion to avoid a lien brought under Bankruptcy Code Section 506(d) and held that a Chapter 13 debtor may strip off a lien on his or her primary residence when the lien holder's interest is totally unsecured, stating that:

> [T]he term 'secured claim' as used in section 1322(b)(2) has the same meaning as the term "secured claim" in section 506(a). Unless there is some equity to which the creditor's lien attaches, there is no allowed secured claim and no entitlement to the protection against modification contained in section 1322(b)(2).   A chapter 13 debtor may 'strip-off' a lien on his or her primary residence under the plan or under section 506(d) when the lien holder's interest is totally unsecured.

In re Geyer, 203 B.R. 726, 729 (S.D. Cal. 1996).

The Court's ruling in the case at bar should be unaffected by the landmark Supreme Court case in Nobleman.   In Nobleman, Justice Thomas held that Code Section 1322 (b)(2) prohibits splitting an undersecured home mortgage holder's claim into its secured and unsecured portions for purposes of confirmation of a Chapter 13 Plan. Nobleman, 13 S.Ct. 2106.   Unlike the case at bar, in Nobleman, the lien to be stripped was the holder of the first deed of trust for $71,335.00, and the debtor's principal residence was worth $23,500.00.   Thus, the bank's claim was at least partially secured by the debtor's home.

1    Here, RESPONDENT's unsecured lien is not the first but the

2 second deed of trust.  Further, there can be no reasonable contention

3 that any part of the second deed of trust is secured.  Thus, the

4 facts, reasoning and holding of <u>Nobleman</u> are inapplicable to this

5 case.

6    In this case, the Real Property is Debtors' rental property

7 which has a market value of $125,000.00.  The Debtors' Current Loan

8 Information reflects a total principle balance of $219,935.83 as of

9 February 1, 2009.  Thus, RESPONDENT's secured interest in the Real

10 Property is zero because there is absolutely no equity to which its

11 lien could attach.

12    Because RESPONDENT possesses a totally unsecured claim on

13 Debtors' residence and it does not have an allowable secured claim,

14 RESPONDENT cannot seek protection from modification under 11 U.S.C.

15 §1322 (b)(2) and Debtor may modify the claim and avoid claimant's

16 lien.  Therefore, RESPONDENT's second deed of trust should be

17 extinguished, reconveyed, and treated as unsecured for purposes of

18 this Chapter 13 proceeding.

19 **IN RE DEWSNUP IS DISTINGUISHED FROM THE LIEN STRIPPING REQUESTED**

20 **IN THIS CHAPTER 13 CASE.**

21    The Chapter 7 case <u>Dewsnup v. Tim</u>, 502 U.S. 410, 112 S. Ct. 773,

22 116 L.Ed.2d 903 (1992) has no application to this Chapter 13 case.

23 The relevant cases are those Chapter 13 cases cited by Debtor above

24 which turn on interpretations of §1322(b)(2).  Those interpretations

25 conclude that a Chapter 13 plan may modify the rights of claim

26 holders, other those **secured** only by a security interest in real

27 property that is the debtors' principal residence.

28

1    Section 1322(b)(2), in light of §506(a), does not preclude

2    modification by a Chapter 13 Plan of the rights of holders of

3    unsecured claims even those of holders of deeds of trust which are

4    completely unsecured.

5    To this end, Justice Scalia, in his dissent in Dewsnup, pointed

6    out the difference between lien stripping in a Chapter 7 case and

7    lien stripping in a Chapter 13 case when he stated that,

8    "Respondents assume, for example, that a debtor in a
     Chapter 13 cannot strip down a mortgage placed on the

9    debtor's home,; but that assumption may beg the very
     question the Court answers today.  True, Section 1322

10   (b)(2) provides that Chapter 13 filers may not "modify the
     rights of secured claims", that are "secured only by a

11   security interest in real property that is the debtor's
     principal residence.  But this can be and has been read, in

12   light of Section 506(a), to prohibit modification of the
     mortgagee's rights only with respect to the operation of

13   his claim that is deemed secured under the Code.  See,
     e.g., In re Hart 923 F.2d 1410, 1415 (CA 10 1991); Wilson

14   v. Commonwealth Mortgage Corp., 895 F.2d 123, 127 CA3
     1990)."

15

16

17   Dewsnup, 502 U.S. 410, 428, 112 S. Ct. 773, 784.

18   In Denver v. Internal Revenue Service, 164 B.R. 132 (C.D. Cal.

19   1994), the Court held that in spite of Dewsnup, stripping an IRS lien

20   on a principal residence is permissible in a Chapter 11 case.   The

21   Court noted that while under Dewsnup, Chapter 7 debtors cannot use

22   §506 to strip liens on an undersecured claim, the Supreme Court

23   specifically reserved the question as to the applicability of its

24   ruling in Dewsnup to cases under the reorganization chapters.   Id.,

25   at 133.   The Denver Court discussed the issue of lien stripping in

26   Chapter 13 cases and cited the 10th Circuit case of In re Hart wherein

27   the Court reasoned:

28   The dispositive issue in this case is whether Eastland's
     undersecured loan may be bifurcated into two claims by

-10-

1

applying general principals of Section 506(a) to the
mortgage and then protecting only the secured claim by
provisions of Section 1322(b).  We believe it can.

2

3  In re Hart, 923 F.2d 1410, 1413 (10th Cir. 1991).

4

5

After citing In re Hart, in Denver the Court went on to state:
"If Section 506 does not permit debtors to bifurcate
undersecured claims and strip down liens to their
collateral value, then all secured creditors would be freed
of any concern that debtors could reduce the amount of
their liens while retaining property.  If Congress did not
intend to allow lien stripping in general in Chapter 13
cases, then why would it bother to draft the exclusionary
language of Section 1322.  As Justice Stevens' concurring
opinion in Nobleman emphasized, the legislative history of
Section 1322(b)(2) reflects Congressional desire to provide
special protections to residential lenders."  Denver, at
141.

6

7

8

9

10

11

12

Accordingly, the language of the relevant Bankruptcy Code

13

sections and the decisions interpreting those sections warrants a

14

finding that RESPONDENT's lien arising from the deed of trust may be

15

extinguished and that its claim may be treated as general unsecured

16

in Debtors' plan.

17

18                                     III.

19

                                  CONCLUSION

20

21

Based on the foregoing, Debtors request that the Court enter

22  an order which:

23

1.    Establishes the value of the Real Property to be $125,000.00;

24

2.    Finds that ASC's security interest is senior to RESPONDENT's

25

      second claim in an amount that exceeds the value of the Real

26

      Property;

27

28  3.    Concludes that RESPONDENT's second claim is wholly unsecured;

4.   Extinguishes RESPONDENT's second lien and permits modification
     of the claim under §1322(b) (2).

DATED: October 9, 2009                    Price Law Group, APC

                                          By: _____
                                             Steven A. Alpert
                                             Attorney for Debtors

## DECLARATION OF DEBTOR BRIAN KEITH THOMAS

I, BRIAN KEITH THOMAS, declare:

1.    I am the debtor in this Chapter 13 bankruptcy, case number 09-27642-lbr.  I have personal knowledge of the facts stated in this declaration and could and would testify thereto if called as a witness.

2.    I filed this case on September 22, 2009.  I am the owner of real property located at 3533 Sweden Street, Las Vegas, Nevada 89129 (the "Real Property").

3.    The Real Property was subject to a first deed of trust in favor of America's Servicing Company ("ACS") which had a balance of $219,935.83 as of February 1, 2009.  I do not dispute this amount.  A true and correct copy of Current Loan Information is attached hereto and is incorporated by reference as **Exhibit "1"**.

4.    The Real Property was also subject to a second deed of trust in favor of SELECT PORTFOLIO SERVICING, INC., ("Respondent") which had a balance of $40,708.93 as of September 30, 2009.  A true and correct copy of RESPONDENT's My Home Loan Loan Activity is attached hereto and is incorporated by reference as **Exhibit "2"**.

5.    According to the appraisal done on my property on August 24, 2009, the fair market value for my property was $125,000.00.  A true and correct copy of the appraisal is attached hereto and incorporated by reference herein as **Exhibit "3"**.

///

///

///

6.    Based on my knowledge as a homeowner of my property and of conditions in my neighborhood, I believe my property to have been worth $125,000.00 as of the time of filing.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on October 9, 2009 at Las Vegas, Nevada.


BRIAN KEITH THOMAS

## DECLARATION OF APPRAISER NATHAN P. SELLERS IN SUPPORT OF VALUATION OF DEBTORS REAL PROPERTY

I, Nathan P. Sellers, declare:

1. I am a Real Estate Appraiser, State of Nevada license Number NVA0006817-RES.  On or about August 24, 2009, I examined and appraised a single family residence located at 3533 Sweden Street, Las Vegas, Nevada 89129(the "Subject Property").

2. I make this declaration based upon my own personal, firsthand knowledge, my education, training, and experience in the field of Real Estate Appraisal, and if called as a witness, I could and would competently and truthfully testify thereto.

3. I have held a Nevada Real Estate Appraiser License since 2006.  I have been doing appraisals since 2003.

4. On or about August 24, 2009, I had occasion to conduct an appraisal of the Subject Property.  Attached hereto and incorporated by reference herein as **Exhibit "3"** is a true and correct copy of August 31, 2009 Residential Appraisal Summary Report (the "Appraisal Report").

6.    In preparing the Appraisal Report, I performed market research, inspected the Subject Property, both interior and exterior, measured the Subject Property to determine the square footage, and surveyed the immediate neighborhood.

7.    In determining the fair market value for the Subject Property, I used both the sales comparison approach and the cost approach, with the greater weight given to the sales comparison approach.  I consider the sales approach to be the most reliable in

1  determining fair market value because it more accurately simulates

2  buyers' perceptions and actions.

3       8.    Based upon my observations, inspection of the Subject

4  Property, and market research as well as my training, education and

5  experience as a residential appraiser, it is my professional

6  opinion that the Subject Property has a fair market value of

7  $125,000.00 as of August 24, 2009.

8       9.    I have no present or contemplated future interest in the

9  subject property described in the appraisal report attached hereto

10  as Exhibit "3".   Neither my employment nor my compensation for this

11  appraisal is contingent upon the value found.

12       I declare under penalty of perjury under the laws of the

13  United States of America that the foregoing is true and complete to

14  the best of my knowledge. Executed this 9th day of October, 2009 at

15  Henderson, Nevada.

16

17

18                                              Nathan P. Sellers

19

20

21

22

23

24

25

26

27

28

**Exhibit 1**

17

9/30/09 8:25 P

## Current Loan Information

Loan Number:            ******1227
Property Address:       3533 SWEDEN ST
                        LAS VEGAS, NV 89129-0000
Borrower Name:          BRIAN THOMAS
Co-Borrower Name:       RHAYNE THOMAS

*ASC Mortgage*

### General Loan Information

| | | | |
|---|---|---|---|
| Current Principal Balance | $219,935.83 | Current Interest Rate | 7.000% |
| Loan Origination Date | 06/01/2006 | Original Loan Amount | $220,000.00 |
| First Payment Due Date | 08/01/2006 | Loan Type | Conventional without PMI ARM |
| Maturity Date | 07/2036 | Payment Method | Monthly Statement |
| Next ARM Adjustment | 08/01/2016 | | |

### Payment Information

**Scheduled Payment Breakdown:**

| | |
|---|---|
| Next Payment Due* | 02/01/2009 |
| Principal & Interest | $1,282.96 |
| Homeowner's Insurance(s) | $44.42 |
| County Tax | $193.58 |
| Other Tax | $16.59 |
| Shortage | $37.10 |
| 02/01/2009 Scheduled Payment | $1,574.65 |

Payments received more than 15 days after the payment due date may require a late charge of $64.15.

* If Next Payment Due date is in the past, additional payments, charges and/or fees may be required to bring your loan current.

**Outstanding Fees:**

| | |
|---|---|
| Late Charges | $384.90 |

### Year-To-Date Totals

| | | | |
|---|---|---|---|
| Principal | $0.00 | Property Taxes | $1,503.94 |
| Interest | $1,282.96 | Hazard Insurance | $596.00 |

Privacy Policy

Copyright © 2000 - 2009. Lender Processing Services, Inc. for America's Servicing Company

18

**Exhibit 2**

19

9/30/09 8:34 P

# S S SELECT SERVICING, INC.

**Contact Information**
**Current Loan Information**
**Loan Activity**

**Tax and Interest**
**Amortization Schedule**
**View Account Statements**
**Help & Contact Center**

**My Home Loan**

2ND

| | |
|---|---|
| **Loan Number:** | xxxxxx9092 |
| **Property Address:** | 3533 SWEDEN ST |
| | LAS VEGAS, NV 89129 |
| **Borrower Name:** | BRIAN THOMAS |
| **Co-Borrower Name:** | RHAYNE THOMAS |

| | |
|---|---|
| **Principal Balance:** | $40,708.93 |
| **Escrow Balance:** | $0.00 |
| **Unpaid Late Charges:** | $80.12 |

Disclosure: The transactions displayed within the payment history reflect funds that you have paid and do not necessarily represent funds that are due.

**Start Date:** 1/30/2009 MM/DD/YYYY    **End Date:** 9/30/2009 MM/DD/YYYY    Go

| Date | Description | Principal | Interest | Escrow | Unapplied Paid | Escrow Balance | Principal Balance |
|---|---|---|---|---|---|---|---|
| 9/16/2009 | Disbursement to Borrower | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40,708.93 |
| 9/3/2009 | Property Preservation Disbursement | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40,708.93 |
| 8/14/2009 | Disbursement to Borrower | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40,708.93 |
| 7/28/2009 | Property Preservation Disbursement | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40,708.93 |
| 7/13/2009 | Disbursement to Borrower | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40,708.93 |
| 6/12/2009 | Disbursement to Borrower | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40,708.93 |
| 5/19/2009 | Property Preservation Disbursement | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40,708.93 |
| 5/18/2009 | Late Charge Assessment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40,708.93 |
| 5/13/2009 | Property Preservation Disbursement | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40,708.93 |
| 5/11/2009 | Disbursement to Borrower | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40,708.93 |
| 4/17/2009 | Disbursement | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40,708.93 |

20

9/30/09 8:34 P

| | to Borrower | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/16/2009 | Late Charge Assessment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40,708.93 |
| 3/19/2009 | Disbursement to Borrower | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40,708.93 |
| 3/16/2009 | Late Charge Assessment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40,708.93 |
| 3/2/2009 | Irregular Payment | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $40,708.93 |
| 3/2/2009 | Modified Coupon Payment | $18.83 | $381.82 | $0.00 | $420.68 | $0.00 | $40,708.93 |
| 2/17/2009 | Late Charge Assessment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40,727.76 |
| 2/17/2009 | Disbursement to Borrower | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $40,727.76 |
| 1/31/2009 | Irregular Payment | $0.00 | $0.00 | $0.00 | $15.00 | $0.00 | $40,727.76 |
| 1/31/2009 | Modified Coupon Payment | $18.65 | $382.00 | $0.00 | $420.68 | $0.00 | $40,727.76 |

© Copyright 2009 Select Portfolio Servicing, Inc. All rights reserved. Reproduction in whole or in part without permission is prohibited.

SPS WebMail   -   Citrix System   -   Site Map

21

Exhibit 3

22



# APPRAISAL OF REAL PROPERTY

### LOCATED AT:
3553 Sweden Street
Plat Book 105, Page 100, Lot 7, Block 1, Day Dawn 8
Las Vegas, NV 89129-7926

### FOR:
Thomas, B K
3761 Warmbreeze Way
Las Vegas, NV 89129

### AS OF:
08/24/2009

### BY:
APPRAISAL 2000
2536 Vera Cruz Circle
Henderson, NV 89074
(702) 597-5229
www.appraisal2000.net

23

Main File No. NA209080806PRV Page #3

APPRAISAL 2000
2538 VERA CRUZ CIRCLE
HENDERSON NEVADA, 89074
PH:(702) 597-5229


Date: August 24, 2009


Thomas, B K
3761 Warmbreeze Way
Las Vegas, NV 89129


Re: Property:    3533 Sweden Street
                 Las Vegas, NV 89129-7926
    Borrower:    Thomas, B K
    File No.:    NA209080806PRV


In accordance with your request, we have appraised the above referenced property. The report of that appraisal is attached.

The purpose of this appraisal is to estimate the market value of the property described in this appraisal report, as improved, in unencumbered fee simple title of ownership.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and city, and an economic analysis of the market for properties such as the subject. The appraisal was developed and the report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

The value conclusions reported are as of the effective date stated in the body of the report and contingent upon the certification and limiting conditions attached.

It has been a pleasure to assist you. Please do not hesitate to contact me or any of my staff if we can be of additional service to you.


Sincerely,


Nathan P Sellers

24

Main File No. NA209080606PRV/ Page #4

## SUMMARY OF SALIENT FEATURES

| | | |
|---|---|---|
| **SUBJECT DESCRIPTION** | Subject Address | 3533 Sweden Street |
| | Legal Description | Plat Book 105, Page 100, Lot 7, Block 1, Day Dawn 8 |
| | City | Las Vegas |
| | County | Clark |
| | State | NV |
| | Zip Code | 89129-7926 |
| | Census Tract | 0032.06 |
| | Map Reference | [32] A-4 (Metro) |
| **SALES PRICE** | Sale Price | $ n/a |
| | Date of Sale | n/a |
| **CLIENT** | Borrower/Client | Thomas, B K |
| | Lender | Thomas, B K |
| **DESCRIPTION OF IMPROVEMENTS** | Size (Square Feet) | 1,308 |
| | Price per Square Foot | $ |
| | Location | Gated Street |
| | Age | 2004 (5 yrs) |
| | Condition | Average |
| | Total Rooms | 5 |
| | Bedrooms | 3 |
| | Baths | 2 |
| **APPRAISER** | Appraiser | Nathan P Sellers |
| | Date of Appraised Value | 08/24/2009 |
| **VALUE** | Final Estimate of Value | $ 125,000 |

25

Appraisal 2000 LLC. (702) 597-5229

Main File No. NA209080608PRV| Page #5

**Summary Appraisal Report**

NA209080608PRV

# Uniform Residential Appraisal Report

File # NA209080608PRV

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | |
|---|---|---|---|
| Property Address 3533 Sweden Street | City Las Vegas | State NV | Zip Code 89129-7926 |
| Borrower Thomas, B K | Owner of Public Record Thomas, B K & R M | County Clark | |
| Legal Description Plat Book 105, Page 100, Lot 7, Block 1, Day Dawn 8 | | | |
| Assessor's Parcel # 138-07-314-007 | Tax Year '09 | R.E. Taxes $ 2,323.00 | |
| Neighborhood Name Las Vegas | Map Reference [32] A-4 (Metro) | Census Tract 0032.06 | |
| Occupant ☐ Owner ☒ Tenant ☐ Vacant | Special Assessments $ n/a | ☒ PUD   HOA $ 68.00   ☐ per year ☒ per month | |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | | | |
| Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) To determine fair market value as of appraisal effective date. | | | |
| Lender/Client Thomas, B K | Address 3761 Warmbreeze Way, Las Vegas, NV 89129 | | |
| Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? | | ☐ Yes ☒ No | |
| Report data source(s) used, offering price(s), and date(s).   No previous listings recorded in MLS for the previous 36 months. | | | |

| | |
|---|---|
| I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.   n/a | |
| Contract Price $ n/a | Date of Contract n/a | Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s)   Public Records |
| Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No |
| If Yes, report the total dollar amount and describe the items to be paid.                    n/a |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☐ Stable ☒ Declining | | | PRICE | AGE | One-Unit 85 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☐ In Balance ☒ Over Supply | | | $ (000) | (yrs) | 2-4 Unit % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | 90 Low | New | Multi-Family % |
| Neighborhood Boundaries   The subject's market area is considered to be: Lone Mountain Road to the N, | | | | 255 High | 27 | Commercial 10 % |
| D, N Buffalo Drive to the E, W Lake Mead to the S and N Hualapai to the W. | | | | 142 Pred. | 12 | Other 5 % |
| Neighborhood Description   All public amenities are accessible, with schools, shopping, transportation, and recreational facilities all located within a 1-5 mile radius. The nearest freeway (Interstate 215) entrance is 0.5 miles west, allowing access to all major employment centers/opportunities. The area is comprised of a myriad of home sizes and styles ranging from tract homes to large acreage custom homes - the area is suburban. | | | | | | |
| Market Conditions (including support for the above conclusions)   Typical of the surrounding Las Vegas Valley, the immediate area has seen a period of continual population, employment, and infrastructure growth with the advent of mega-resorts on the Las Vegas Strip. Presently, increased supply has resulted in declining values. Marketing times for the most recent sales in the area vary from 30-90 days at 98-100% of List Price. | | | | | | |

| | | | |
|---|---|---|---|
| Dimensions See attached site plat map | Area 3,485 SF /0.08 Acres | Shape Rectangular / Average | View Park/AboveAverage |
| Specific Zoning Classification (R-PD9) | Zoning Description Residential Planned Development District (R-PD9) | | |
| Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe) | | | |
| Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No  If No, describe | | | |
| Approved Zoning: R-2 | | | |

| Utilities | Public | Other (describe) | Public | Other (describe) | Off-site improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|
| Electricity | ☒ | (Underground) | Water ☒ | | Street Paved Asphalt/Gated Entry | ☒ | |
| Gas | ☒ | | Sanitary Sewer ☒ | | Alley None | | |

| | | | |
|---|---|---|---|
| FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X | FEMA Map # 32003C2135E | | FEMA Map Date 9/27/2002 |
| Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe | | | |
| Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe | | | |
| No apparent adverse easements or encroachments noted. No apparent adverse easements or encroachments noted. See "Site Comments" on the attached addenda. The subject home is located in a gated community with access limited to residents and invited guests. The subject streets within the development are publicly maintained, however, access is restricted through a gated entry. | | | |

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | | | Foundation Walls Poured Conc/AA | | Floors Carpet/Vinyl/Avg | |
| # of Stories 1 Story | ☐ Full Basement ☐ Partial Basement | | | Exterior Walls Stucco/AbAvg | | Walls Drywall/Avg | |
| Type ☒ Det. ☐ Att. ☐ S-Det/End Unit | Basement Area sq.ft. | | | Roof Surface Tiled Roof/AbAvg | | Trim/Finish Wood/Trim/Avg | |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish n/a % | | | Gutters & Downspouts RoofOverhng/AbAvg | | Bath Floor Vinyl Floor/Avg | |
| Design (Style) 1Stry/Conv/Avg | ☐ Outside Entry/Exit ☐ Sump Pump | | | Window Type Dbl/Alumin/AbAvg | | Bath Wainscot Tile/Avg | |
| Year Built 2004 | Evidence of ☐ Infestation None noted | | | Storm Sash/Insulated None/None | | Car Storage ☐ None | |
| Effective Age (Yrs) 5 years | ☐ Dampness ☐ Settlement | | | Screens Window/Door/Avg | | ☒ Driveway  # of Cars 2 | |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | | | Amenities ☐ Woodstove(s) # | | Driveway Surface Conc. Paver | |
| ☐ Drop Stair ☐ Stairs | ☐ Other  Fuel Gas | | | ☐ Fireplace(s) #  ☒ Fence CB Walls | | ☒ Garage  # of Cars 2 | |
| ☐ Floor ☒ Scuttle | Cooling ☒ Central Air Conditioning | | | ☒ Patio/Deck Cover ☒ Porch Covered | | ☐ Carport  # of Cars | |
| ☐ Finished ☐ Heated | ☒ Individual ☐ Other | | | ☐ Pool ☐ Other | | ☒ Att. ☐ Det. ☐ Built-in | |
| Appliances ☐ Refrigerator ☒ Range/Oven ☒ Dishwasher ☐ Disposal ☐ Microwave ☒ Washer/Dryer ☒ Other (describe) Industrial Fan | | | | | | | |
| Finished area above grade contains:   5 Rooms   3 Bedrooms   2 Bath(s)   1,306 Square Feet of Gross Living Area Above Grade | | | | | | | |
| Additional features (special energy efficient items, etc.)   The subject home is a wood framed two story noted to have stucco exterior finish, concrete tile roof, 1 A/C unit, elevated ceilings, window blinds, double aluminum windows, water heater, and adequate fenestration. | | | | | | | |
| Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   See "Depreciation Comments" on the attached addenda. The subject home is noted to be in 'average' overall condition. The home has basic upgrades and finishes within vinyl flooring and laminate countertops. The home has been very well maintained and was noted to have little signs of aging. All mechanical and utility systems were on and functioning properly. | | | | | | | |
| Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No  If Yes, describe | | | | | | | |
| The subject has been very well maintained, and there is no evidence of adverse conditions or physical deficiencies. There were no readily apparent deficiencies or repairs noted. The subject living area is noted in tax records to have 1,304 sf of living area; however, upon measuring the home, the appraiser noted the total calculated GLA is 1,308 sf of total living area. | | | | | | | |
| Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe | | | | | | | |
| The surrounding area is predominantly residential in nature with homes constructed currently and during the late 1990's - 2000's. | | | | | | | |

26

# Uniform Residential Appraisal Report

Main File No. NA209080606PRV
File # NA208080606PRV

There are +/-31 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 94,500 to $ 428,000 .
There are +/-53 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 90,000 to $ 255,000 .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 3533 Sweden Street | 9636 Fox Forest Avenue | | 9821 Melmo Avenue | | 2905 Lotus Hill Drive | |
| | Las Vegas, NV 89129-7926 | AP #138-07-512-045 | | AP #138-07-314-015 | | AP #138-16-212-006 | |
| Proximity to Subject | | 0.55 miles NE | | 0.05 miles S | | 0.78 miles S | |
| Sale Price | $ n/a | | $ 120,000 | | $ 130,000 | | $ 155,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 91.60 sq.ft. | | $ 99.69 sq.ft. | | $ 111.99 sq.ft. | |
| Data Source(s) | | Public Records/MLS#935789 | | Public Records/MLS#925643 | | Public Records/MLS#911015 | |
| Verification Source(s) | | Doc#20090722-02313/DOM:14 | | Doc#20090804-02342/DOM:3 | | Doc#20090805-02760/DOM:158 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | VA | | Conventional | | Cash | |
| Concessions | | None Noted | | None Noted | | None Noted | |
| Date of Sale/Time | | 07/22/2009 | | 06/04/2009 | -2,600 | 06/05/2009 | |
| Location | Gated Street | Resident. Street | +3,000 | Gated Street | | Resident. Street | +3,000 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 3,485 SF | 3,971 SF | | 3,485 SF | | 1,348 SF | +2,137 |
| View | Area/Average | Area/Average | | Area/Average | | Area/Average | |
| Design (Style) | 1Stry/Conv/Avg | 1Stry/Conv/Avg | | 1Stry/Conv/Avg | | 1Stry/Conv/Avg | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 2004 (5 yrs) | 1998 (11 yrs) | +3,000 | 2003 (6 yrs) | +500 | 1992 (17 yrs) | +6,000 |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total \| Bdrms. \| Baths | Total \| Bdrms. \| Baths | | Total \| Bdrms. \| Baths | | Total \| Bdrms. \| Baths | |
| Room Count | 5 \| 3 \| 2 | 6 \| 3 \| 2 | | 5 \| 3 \| 2 | | 4 \| 2 \| 2 | |
| Gross Living Area | 1,308 sq.ft. | 1,310 sq.ft. | | 1,304 sq.ft. | | 1,384 sq.ft. | -2,280 |
| Basement & Finished | None | None | | None | | None | |
| Rooms Below Grade | n/a | n/a | | n/a | | n/a | |
| Functional Utility | Good | Good | | Good | | Good | |
| Heating/Cooling | FAU/Central | FAU/Central | | FAU/Central | | FAU/Central | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 2 Gar, att | 2 Gar, att | | 2 Gar, att | | 2 Gar, att | |
| Porch/Patio/Deck | Porch/Patio | Porch/Patio | | Porch/Patio | | Porch/Patio | |
| Landscaping | Minimal/FR/RR | Minimal/FR/RR | | Minimal/FR/RR | | Minimal/FR/RR | |
| Fireplaces | No Fireplace | 1 Fireplace | -1,000 | No Fireplace | | No Fireplace | |
| Pool/Spa | None | None | | None | | None | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 5,000 | ☐ + ☒ - | $ -2,100 | ☒ + ☐ - | $ 8,857 |
| Adjusted Sale Price | | Net Adj. 4.2 % | | Net Adj. 1.6 % | | Net Adj. 5.7 % | |
| of Comparables | | Gross Adj. 5.8 % | $ 125,000 | Gross Adj. 2.4 % | $ 127,900 | Gross Adj. 8.7 % | $ 163,857 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain



My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)  MLS / Public Records
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)  MLS / Public Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | Recorded value on 06/09/06 | Trustees Deed 03/08/2009 | Trustees Deed 03/03/2009 | No previous sales within |
| Price of Prior Sale/Transfer | for $275,000 (Doc#04089) | for $122,000 (doc#03386) | for $108,800 (doc#03092) | the past 36 months |
| Data Source(s) | MLS/Public Records | MLS/Public Records | MLS/Public Records | MLS/Public Records |
| Effective Date of Data Source(s) | 08/24/2009 | 08/24/2009 | 08/24/2009 | 08/24/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales  The subject home was noted to have recorded value on 06/09/06 for $275,000 (doc#04089). Previous sales data for each of the comparable sales is noted below each of the sales. There are some of the homes utilized within the sales grid that were noted to be relisted and currently back on the market. The details of the listings were included in the previous sales history section.

Summary of Sales Comparison Approach    The appraiser was restricted to the limited number of recent sales that have occurred within the subject subdivision in the past 3 months and has selected the most recent and appropriate sales available with reasonable market supported adjustments considered within the sales grid. There are currently 2 pending sales that are also included in the appraisal report as sales #4 and #5 that are similar size homes. The pending sales are included for secondary support of the final indicated value with primary support given to those closed sales #1 - #3. Sale #3 is in an age-restricted community and therefore given little value consideration. All adjustments were market extracted based on the paired sales analysis provided by market data. The net and gross adjustment percentages are within recommended limits due to overall similarities between the subject and the comparable sales. The lower end of the adjusted sales range was emphasized due to the fact that the market is declining 1.0 - 1.5% per month for the past 36 months. The final indicated value is bracketed and well supported.

Indicated Value by Sales Comparison Approach $  125,000

Indicated Value by: Sales Comparison Approach $ 125,000    Cost Approach (if developed) $ 125,217    Income Approach (if developed) $
Although the Cost Approach supports the final estimate of value, most weight is given to the Sales Comparison Analysis; as it best reflects the actions of buyers and/or sellers in the marketplace. Income Approach is not used, due to a lack of recent and reliable rental data.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair. This is a summary appraisal report.
The subject is appraised "AS IS" per the request of the client. The client requested that the appraisal be completed on Fannie Mae Form 1004.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$  125,000 , as of  08/24/2009 , which is the date of inspection and the effective date of this appraisal.

27

## Uniform Residential Appraisal Report

NA209080606PRV
File # NA209080606PRV

**ADDITIONAL COMMENTS**

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    The appraiser has used the extraction method where possible; however, it is important to note that throughout the Las Vegas Valley, individual parcels are not in adequate supply because most home construction occurs by builders that include the cost of the lot with each offered home. Land sales in the area are noted to be $100,000 - $125,000 per 1/2 acre depending on views. There are however, sufficient parcels for sale in the area to determine a proper land value.

| | | | | |
|---|---|---|---|---|
| ESTIMATED ☒ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ | 20,000 |
| Source of cost data  Marshall & Swift & Local Builders Data | DWELLING | 1,308 Sq.Ft. @ $   62.00 | =$ | 81,096 |
| Quality rating from cost service  Avg        Effective date of cost data  2008 | | Sq.Ft. @ $ | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | CvdPor/Patio/CBWls/Landscpn | | =$ | 12,000 |
| Cost factors based on local builders and/or Marshall & Swift information | Garage/Carport | 382 Sq.Ft. @ $   43.00 | =$ | 16,426 |
| for square foot calculations (rounded).  Land/Improvement ratio is normal | Total Estimate of Cost-New | | =$ | 109,522 |
| for the area.  Depreciation determined by the overall condition of the unit | Less        Physical        Functional        External | | | |
| as related to normal wear and tear, and the average life expectancy of | Depreciation       7,305 | | =$( | 7,305) |
| similar residences in the surrounding area. | Depreciated Cost of Improvements | | =$ | 102,217 |
| | "As-is" Value of Site Improvements | | =$ | 3,000 |
| Estimated Remaining Economic Life (HUD and VA only)        70 Years | INDICATED VALUE BY COST APPROACH | | =$ | 125,217 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| | | | |
|---|---|---|---|
| Estimated Monthly Market Rent $        n/a        X  Gross Rent Multiplier        n/a        = $ | | | Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☐ No    Unit type(s)  ☒ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| | | |
|---|---|---|
| Total number of phases | Total number of units | Total number of units sold |
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes  ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source

Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

28

Main File No. NA209080606PRV Page #8

NA209080606PRV
File # NA209080606PRV

# Uniform Residential Appraisal Report

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

29

Main File No. NA209080606PRV Page #9
NA209080606PRV
File # NA209080606PRV

## Uniform Residential Appraisal Report

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

---


30

Main File No. NA209080606PRV| Page #10

## Uniform Residential Appraisal Report

NA209080606PRV
File # NA209080606PRV

The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name   Nathan P Sellers | Name |
| Company Name   Appraisal 2000 | Company Name |
| Company Address   2538 Vera Cruz Circle, Henderson, NV 89074 | Company Address |
| Telephone Number   (702) 597-5229 | Telephone Number |
| Email Address   appraisal2000@msn.com | Email Address |
| Date of Signature and Report   08/31/2009 | Date of Signature |
| Effective Date of Appraisal   08/24/2009 | State Certification # |
| State Certification # | or State License # |
| or State License #   NVA.0006817-RES | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License |
| State   NV | |

SUBJECT PROPERTY

Expiration Date of Certification or License   6/30/2010

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection _____
☐ Did inspect interior and exterior of subject property
   Date of Inspection _____

ADDRESS OF PROPERTY APPRAISED
3533 Sweden Street
Las Vegas, NV 89129-7928
APPRAISED VALUE OF SUBJECT PROPERTY $   125,000
LENDER/CLIENT
Name
Company Name   Thomas, B K
Company Address   3761 Warmbreeze Way, Las Vegas, NV 89129

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection _____

Email Address _____

31

## Uniform Residential Appraisal Report

NA209080606PRV
File # NA209080606PRV

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 3533 Sweden Street | 3545 Falkenburg Street | | 7649 Winterthur Court | | | |
| | Las Vegas, NV 89128-7926 | AP #138-07-314-030 | | AP #138-09-617-012 | | | |
| Proximity to Subject | | 0.05 miles NE | | 2.67 miles E | | | |
| Sale Price | $ n/a | $ 124,500 | | $ 135,000 | | $ | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 95.48 sq.ft. | | $ 103.53 sq.ft. | | $ sq.ft. | |
| Data Source(s) | | Public Records/MLS#841757 | | Public Records/MLS#900633 | | | |
| Verification Source(s) | | PENDING SALE / DOM:356 | | PENDING SALE / DOM:164 | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Conventional | | Conventional | | | |
| Concessions | | -2% LP/SP | -2,500 | -2% LP/SP | -2,700 | | |
| Date of Sale/Time | | EstCoe:9/25/09 | | EstCoe12/31/09 | | | |
| Location | Gated Street | Gated Street | | Gated Street | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 3,485 SF | 3,485 SF | | 5,227 SF | -1,742 | | |
| View | Area/Average | Area/Average | | Area/Average | | | |
| Design (Style) | 1Stry/Conv/Avg | 1Stry/Conv/Avg | | 1Stry/Conv/Avg | | | |
| Quality of Construction | Average | Average | | Average | | | |
| Actual Age | 2004 (5 yrs) | 2003 (6 yrs) | +500 | 2004 (5 yrs) | | | |
| Condition | Average | Average | | Average | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 5   3   2 | 5   3   2 | | 5   3   2 | | | |
| Gross Living Area | 1,308 sq.ft. | 1,304 sq.ft. | | 1,304 sq.ft. | | sq.ft. | |
| Basement & Finished | None | None | | None | | | |
| Rooms Below Grade | n/a | n/a | | n/a | | | |
| Functional Utility | Good | Good | | Good | | | |
| Heating/Cooling | FAU/Central | FAU/Central | | FAU/Central | | | |
| Energy Efficient Items | Standard | Standard | | Standard | | | |
| Garage/Carport | 2 Gar, att | 2 Gar, att | | 2 Gar, att | | | |
| Porch/Patio/Deck | Porch/Patio | Porch/Patio | | Porch/Patio | | | |
| Landscaping | Minimal/FR/RR | Minimal/FR/RR | | Minimal/FR/RR | | | |
| Fireplaces | No Fireplace | No Fireplace | | 1 Fireplace | -1,000 | | |
| Pool/Spa | None | None | | None | | | |
| Net Adjustment (Total) | | ☐ + ☒ - $ | -2,000 | ☐ + ☒ - $ | -5,442 | ☐ + ☐ - $ | |
| Adjusted Sale Price | | Net Adj. 1.6 % | | Net Adj. 4.0 % | | Net Adj. % | |
| of Comparables | | Gross Adj. 2.4 % $ | 122,500 | Gross Adj. 4.0 % $ | 129,558 | Gross Adj. % $ | |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | Recorded value on 06/09/06 | No previous sales within | No previous sales within | |
| Price of Prior Sale/Transfer | for $275,000 (Doc#04089) | the past 36 months | the past 36 months | |
| Data Source(s) | Public Records | MLS/Public Records | MLS/Public Records | |
| Effective Date of Data Source(s) | 08/24/2009 | 08/24/2009 | 08/24/2009 | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

32

### Supplemental Addendum

File No. NA209080606PRV

| Borrower/Client | Thomas, B K | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3533 Sweden Street | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code 89129-7926 |
| Lender | Thomas, B K | | | | | |

### SITE COMMENTS

The general topography of the subject property is level, with the subject's built-up/engineered pad noted to have a slight (downward) contour around the perimeter of the dwelling and a sufficient overhang along the roof line, as to assist in drainage and/or diverting water away from the structure/improvements. Typical of the area, the slight gradient is not noted to affect the usability and/or utility of the site area. The subject property is a is typical/average in size for the neighborhood. The dimensions of the lot are approximate measurements according to the subdivision plat map and as indicated on public records. The subject lot is a level lot with typical views of the surrounding area.

Exterior on-site improvements noted upon inspection, include: large concrete driveway (2 car capacity), covered porch, covered patio, and decorative landscaping, concrete block side and rear perimeter walls surrounding the rear yard of the home. The subject's title report was not viewed.

### ADDITIONAL FEATURES

The subject's one-level tract home noted to have tile entryway, elevated ceilings, large living room with adjacent dining area; kitchen with laminate countertops, vinyl flooring and average appliances; there is a rear access door from the kitchen to the rear covered patio and also a slider door off the back bedroom to the rear patio; the subject has 3 bedrooms and 2 bathrooms. The bathrooms were noted to have vinyl flooring, cultured marble countertops, and tile surround.

### DEPRECIATION COMMENTS

The subject property is considered to be in 'Average' overall condition. Physical Depreciation was considered using the 'age-life' method. The subject's remaining economic life is estimated to be 60-65 years. No external or functional depreciation noted. Although the Cost Approach was included, the appraiser gave no emphasis to this as it is not applicable given the assignment type and request for a 'market value' appraisal report.

### COMMENTS ON THE SALES COMPARISON ANALYSIS

A comprehensive search was performed to find the most recent sales of similar and/or match type properties to that of the subject residence. In the selection process, careful consideration was given to location, neighborhood amenities, age, quality of construction and living area. The recited comparables are the most recent sales in the "market" area and considered to be the most representative of the subject "market".

Data for the Sales Comparison Analysis was obtained through the use of the local Multiple Listing Service (MLS), Tax Star, Transamerica Intellitech, Inc. (MetroScan), Title companies, Realtors, Sales Associates and/or office files. - Should any error or omission be subsequently discovered, this appraiser reserves the right to modify the report.

The following appraisal methods and techniques were utilized in arriving at the Final Estimate of Value:

A. All available data sources were researched for comparable sales, economic trends, physical conditions which have or might have an adverse impact upon the subject property, and other information pertinent in this appraisal.

B. A physical inspection of the subject property was performed. Observations of physical condition and functional obsolescence were taken into consideration and a sketch of the improvements was made.

C. An exterior inspection of the comparable properties was made and three or more were selected as being most similar to the subject property and utilized as comparable sales.

D. A detailed review and analysis of all pertinent data was made and a final opinion of value was determined.

E. The report and all pertinent exhibits and addenda were prepared and transmitted to the client.

### ADDITIONAL MARKET COMMENTS

Per the Greater Las Vegas MLS, the number of available or listed properties in the single family housing market has increased since this time leading to a stabilizing period - resulting in a increased supply of available listings. The market has experienced over 30 months of declining values. For this reason the appraiser has used sales that are less than 3 months old and emphasized those sales which indicate good representatives of the subject in the marketplace. The appraiser has also included a detailed list of the most recent sales activity within a 1.0 mile radius.

All sales included are within the recommended one mile radius and include include homes with similar features, living area, and age. The sales were limited to the Greater Las Vegas MLS and those attained and confirmed within public records.

All comparables are from the subject's "market" area and are deemed to be the most recent and reliable representatives of that market. Individual comments for each comparable sale are noted per the MLS sheet on the appropriate comparable photo pages.

All sales are custom single family homes considered to be in similar 'average' condition and present good/accurate values for the subject market area. There are other similar size homes within the subject development however, very few of the homes have sold within the past year. Due to the newer age of the development, there is an extremely limited

33

Main File No. NA209080806PRV| Page #13

## Supplemental Addendum

File No. NA209080806PRV

| Borrower/Client | Thomas, B K | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3533 Sweden Street | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code  89129-7926 |
| Lender | Thomas, B K | | | | | |

number (2) of sales that have occurred within the subject subdivision within the past year.  The included sales are considered to be the best representatives of the subject property and best indicators of value.

This information is included for secondary support and not as primary source of value determination.  For final value conclusion determination, please see 'Final Value Conclusion' commentary below.

**Comparables Summary & Estimated Indicated Value**

| | Sale Price | Grs Adj % | Ind Value | Weight |
|---|---|---|---|---|
| Comp #1: | 120,000 | 5 | 124,000 | 18.8192 |
| Comp #2: | 130,000 | 2.3846 | 127,900 | 22.0522 |
| Comp #3: | 155,000 | 6.7206 | 160,857 | 16.6922 |
| Comp #4: | 124,500 | 2.4096 | 122,500 | 22.0213 |
| Comp #5: | 135,000 | 3.7089 | 129,993 | 20.4152 |

ESTIMATED INDICATED VALUE OF THE SUBJECT        : $131,905
**INDICATED VALUE OF THE SUBJECT                      : $125,000**

Estimated indicated value is determined by using the Gross Adjustment of sale price for each comparable as a measure of the relative quality of the comp.  A lower adjustment indicates a better comp, and vice versa.  The ratio of gross dollar adjustment to sale price for each of the comps is used to calculate the weight each comp should have in a weighted average calculation. This weighted average is used as the indicated value of the subject.

The appraiser has emphasized the lower end of  the adjusted sales range in determining the indicated value because of the declining market.

All adjustments were either extracted from the market using paired sales or they were based on depreciated cost figures provided by the Marshall & Swift Residential Cost Handbook.  Adjustments were made for differences in lot size, location and views, square footage, bath count, garage count, exterior site amenities (covered patios, etc.), landscaping and interior upgrades.

The appraiser has included MLS photos as part of the reporting process.  These photos were included for additional reference and information.  The use of these photos is more accurate and descriptive of the property condition and amenities at the time of it's sale.

After review of a market analysis for the subject property, some (improvement) variances were minimized due to conformity and preference, and/or no significant changes in value were noted for differences in financing type, location, fireplaces, and/or roof coverings; thus, no adjustments were made  within the Sales Comparison Analysis.

Financing options include partial seller financing at rates similar to conventional rates and up to 3.0 seller paid points towards non-recurring closing costs without an apparently measurable market impact on sales prices.

### SCOPE OF THE APPRAISAL

The following steps were followed in arriving at the final value estimate included in this report assembly of the subject property:

1) After receiving the assignment, a preliminary search of all resources customary to the appraisal of residential real estate was made to determine general market trends, influences and other significant factors pertinent to the subject property.

2) A physical inspection of the property was performed.  Although due diligence was exercised while at the subject property, the Appraiser is not an expert in such matters as pest control, structural engineering, hazardous waste, etc. No warranty is given relating to the presence of these elements and their effect, if any, on the value of the subject property except as otherwise noted.  As needed, inspections by various professionals within these fields might be recommended with the final value estimate subject to their findings.

3) A second review of the data was then performed with the most relevant factors extracted and considered.  Sales were examined and discussed with parties involved in the transactions or from public record or other sources as deemed reliable.  Market factors were weighted and their influence on the subject property estimated.

4) The appraisal report was then delivered to the client on August 31, 2009 which constituted completion of the assignment.  The effective date of this appraisal is the date the subject property was inspected, August 24, 2009.  The appraisal report was prepared at the request of the client as noted in this report.

### MARKET VALUE

The appraisal is based upon the definition of fair market value as set forth in Section 34.42 (f) of the office of the comptroller (OCC) and the uniform standards of professional appraisal practice. Market value is defined by all five federal agencies and the RTC.

Informed entities viewing this report should understand the relationship between the accounting term "fair value" and the

34

### Supplemental Addendum

File No. NA209080606PRV

| Borrower/Client | Thomas, B K | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3533 Sweden Street | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code 69129-7926 |
| Lender | Thomas, B K | | | | | |

appraisal term "market value" and be in a position to clarify the use of these terms for their common clients.

**WARRANTIES AND INDEMNITY**

Appraiser does not make any warranties or guarantees of any kind regarding the condition of the property, sufficiency of title, areas and boundaries, mechanical and structural conditions of the improvements, and with the agreement that the Appraisal Report represents Appraiser's opinion of value only, without any warranty that the property will sell for the appraised value. Client agrees to indemnify Appraiser, his employees, and independent contractors from all claims, suits, and charges of any nature that may arise out of this agreement.

Notice: errors and omissions will be corrected in all original signed copies if reported in a written request to the appraiser.

**FINAL VALUE CONCLUSIONS**

All of the comparables were given consideration and weight in the valuation process. All of the comparables are located within the same general market area as the subject. Adjustments were based upon the estimated market reaction for the significant differences and do not include every difference. The Market Approach is still the most reliable approach available to the appraiser and will remit in a reasonable value estimate.

**ENVIRONMENTAL DISCLOSURE**

The appraiser is not a home or environmental inspector. The appraiser provides an opinion of value. The appraisal does not guarantee that the property is free of defects or environmental problems. The appraiser performs an inspection of visible and accessible areas only. Mold may be present in areas the appraiser cannot see. If further concern exists, then a professional home inspection or environmental inspection is recommended.

No environmental assessment for the subject site or neighborhood was undertaken. The existence of hazardous substances, including Asbestos, Molds, Polychlorinated Biphenyl's, petroleum leakage or agricultural chemicals is not known to be present on the subject site. The site inspection did not reveal any signs, which would reveal such conditions. The appraiser has no knowledge of the existence of such materials on or in the property unless otherwise stated. Further, the appraiser is not qualified to test such substances as stated above. If the presence of such substances such as Asbestos, Urea Formaldehyde, foam insulation, etc. are present, the value of the property may be affected. The value estimated is predicted on the assumption that there is no such condition on or in the property or in proximity to the subject that would cause a loss in value. No responsibility is assumed for any conditions or for my expertise or engineering knowledge required to discover them. The client is urged to retain an expert in the field of environmental impacts upon real estate should them be any questions regarding this matter.

**APPRAISAL DISPUTES**

The appraiser has completed this report to the best of his professional ability and reserves the right to change/modify this report without contest. Any dispute that may arise regarding the indicated value and/or the selection of available sales and/or request for additional sales and/or rebuttal from desk or field reviews as a result of this report and/or significant modifications regarding the Comparable Sales Analysis, may require an additional fee and documentation of disputing evidence.

The appraiser will not address undocumented/hasty generalizations or 'opinions' developed by individuals who may be familiar with the appraisal process but are not experienced or 'localized' with the Las Vegas market or who have limited information restricted to 'public information' only.

The appraiser is well educated in the appraisal process and has supported documentation/justification to support the appraisal process and the final value derived from the appraisal process. Therefore, the appraiser is not responsible/liable for additional changes or modifications for those items/reasons listed above. The appraiser liable for the delay as a result of any review or additional requirements requested by the client.

**DIGITAL SIGNATURE DISCLOSURE**

This appraisal report was digitally signed with direct authorization and control of the appraiser. The signature is authorized exclusively by Nathan P. Sellers. The digital signatures carry the same level of authenticity as an ink signature.

35

Main File No. NA20080808PRV1 Page #15

## Current Sales and Listings within the Subject's Immediate Area

| | |
|---|---|
| Borrower/Client | Thomas, B K |
| Property Address | 3533 Sweden Street |
| City  Las Vegas | County  Clark    State  NV    Zip Code  89129-7926 |
| Lender | Thomas, B K |

Listed below are the single family units within the area that were noted to be located within 1.0 miles of the subject property.
Data acquired from Las Vegas MLS (08/24/2009).
ER - LISTING; EA- LISTING; P - PENDING SALE; C - CONTINGENT SALE; S - CLOSED SALE

### Residential Comparative Market Summary

| ML# / Status | #Beds | Baths | LivArea | YrBlt | PROP | Bldg Desc | List Price | Sale Price | DOM | CDOM |
|---|---|---|---|---|---|---|---|---|---|---|
| 946295 ER<br>9805 MALMO AV | 3 | 2 / 0 / 0 | 1304 | 2003 | SFR<br>#Grg/Cpt: | 1STORY<br>2/0 | $120,000<br>Pool: N  Spa: N  Sold: | | | 69 |
| 841757 C<br>3545 FALKENBERG ST | 3 | 2 / 0 / 0 | 1304 | 2003 | SFR<br>#Grg/Cpt: | 1STORY<br>2/0 | $124,500<br>Pool: N  Spa: N  Sold: | | | 355 |
| 911547 S<br>3529 SWEDEN ST | 3 | 2 / 0 / 0 | 1304 | 2004 | SFR<br>#Grg/Cpt: | 1STORY<br>2/0 | $118,900<br>Pool: N  Spa: N  Sold: 04/24/09 | $120,000 | 11 | 63 |
| 925643 S<br>9821 MALMO AV | 3 | 2 / 0 / 0 | 1304 | 2003 | SFR<br>#Grg/Cpt: | 1STORY<br>2/0 | $108,900<br>Pool: N  Spa: N  Sold: 06/04/09 | $130,000 | 3 | 240 |

| Total Listings: 4 | Living Area SF | List Price | Sale Price | DOM | CDOM | SP/SqFt |
|---|---|---|---|---|---|---|
| Average: | 1304 | $118,075 | $125,000 | 7 | 182 | $96 |
| Minimum: | 1304 | $108,900 | $120,000 | 3 | 63 | $92 |
| Maximum: | 1304 | $124,500 | $130,000 | 11 | 355 | $99 |
| Median: | 1304 | $119,450 | $125,000 | 7 | 155 | $96 |

36

Main File No. NA20500B0606PRV| Page #16

## Building Sketch

| Borrower/Client | Thomas, B K | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3533 Sweden Street | | | | | |
| City | Las Vegas | | County | Clark | State | NV | Zip Code | 89129-7928 |
| Lender | Thomas, B K | | | | | |



37

# Building Sketch

| Borrower/Client | Thomas, B K | | | |
|---|---|---|---|---|
| Property Address | 3533 Sweden Street | | | |
| City | Las Vegas | County  Clark | State  NV | Zip Code  89129-7926 |
| Lender | Thomas, B K | | | |

## AREA CALCULATIONS SUMMARY

| Code | Description | Net Size | Net Totals |
|---|---|---|---|
| GLA1 | First Floor | 1307.8 | 1307.8 |
| P/P | Cov Patio | 72.0 | 72.0 |
| GAR | Garage | 382.4 | 382.4 |

| Net LIVABLE Area | (Rounded) | 1308 |
|---|---|---|

## LIVING AREA BREAKDOWN

| Breakdown | | | Subtotals |
|---|---|---|---|
| First Floor | | | |
| 0.5 x | 2.1 x | 2.1 | 2.2 |
| | 2.1 x | 8.9 | 18.8 |
| | 5.9 x | 37.0 | 217.5 |
| | 11.0 x | 19.0 | 209.0 |
| | 5.0 x | 33.0 | 165.0 |
| | 7.1 x | 40.1 | 285.7 |
| | 12.0 x | 34.1 | 409.5 |

| 7 Items | (Rounded) | 1308 |
|---|---|---|

### First Floor — GLA1

| | | | | |
|---|---|---|---|---|
| 0.5 x | 2.1 x | 2.1 | = | 2.2 |
| | 2.1 x | 8.9 | = | 18.8 |
| | 5.9 x | 37.0 | = | 217.5 |
| | 11.0 x | 19.0 | = | 209.0 |
| | 5.0 x | 33.0 | = | 165.0 |
| | 7.1 x | 40.1 | = | 285.7 |
| | 12.0 x | 34.1 | = | 409.5 |

| Area total (Rounded) = | 1308 |
|---|---|

### Garage — GAR

| | | | |
|---|---|---|---|
| 19.1 x | 20.0 | = | 382.4 |

| Area total (Rounded) = | 382 |
|---|---|

### Cov Patio — P/P

| | | | |
|---|---|---|---|
| 6.0 x | 12.0 | = | 72.0 |

| Area total (Rounded) = | 72 |
|---|---|

38

Main File No. NA205080606PRVI Page #18

## Site Map

| Borrower/Client | Thomas, B K | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3533 Sweden Street | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code  89129-7928 |
| Lender | Thomas, B K | | | | | |



39

Main File No. NA209080806PRVI Page #19

## Plat Map

| Borrower/Client | Thomas, B K | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3533 Sweden Street | | | | | |
| City | Las Vegas | | County | Clark | State NV | Zip Code 89129-7926 |
| Lender | Thomas, B K | | | | | |

| | | |
|---|---|---|
| 81.75 13807314004 | 40 | 40  86  13807314033 |
| 81.85 13807314005 | 40 | 40  13807314034 |
| **Subject 3533 Sweden Street** | 40 | 40  13807314035 |
| 82.05 13807314007 | 40 | 40  13807314036 |
| 82.16 13807314008 | 40 | 40  13807314037 |
| 82.26 13807314009 | 40 | 40  13807314038 |
| 82.36 13807314010 | 40 | 40  13807314039 |

13807301005
W/S SUBSTATION  UNINC

SWEDEN

0 ———————————— 200ft

40

Main File No. NA209080608PRVI Page #20

## Flood Zone Map

| Borrower/Client | Thomas, B K | | | | |
|---|---|---|---|---|---|
| Property Address | 3533 Sweden Street | | | | |
| City | Las Vegas | County | Clark | State NV | Zip Code 89129-7926 |
| Lender | Thomas, B K | | | | |



View Printer-Friendly Map

The District makes no warranties concerning the accuracy of this data.  View Disclaimer

**This parcel IS NOT in a 100-year flood zone.**

| | |
|---|---|
| *Parcel* | 13807314007 |
| *Owner* | THOMAS BRIAN & RHAYNE |
| *Address* | 3533 SWEDEN |
| *Entity* | Las Vegas |
| *Contact* | 702-229-6569 |
| *Flood Zone* | This parcel IS NOT in a 100-year flood zone. |
| *FIRM Panel* | View FIRM Panel (2135) |
| *LOMR* | This parcel is not affected by a LOMR |

41

Main File No. NA200080606PRVI Page #21

**Location Map**

| Borrower/Client | Thomas, B K | | | | |
|---|---|---|---|---|---|
| Property Address | 3533 Sweden Street | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89129-7926 |
| Lender | Thomas, B K | | | | |



## Subject Photo Page

| Borrower/Client | Thomas, B K | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 3533 Sweden Street | | | | | | |
| City | Las Vegas | | County | Clark | State | NV | Zip Code 89129-7926 |
| Lender | Thomas, B K | | | | | | |



**Subject Front**

| | |
|---|---|
| 3533 Sweden Street | |
| Sales Price | n/a |
| G.L.A. | 1,308 |
| Tot. Rooms | 5 |
| Tot. Bedrms. | 3 |
| Tot. Bathrms. | 2 |
| Location | Gated Street |
| View | Area/Average |
| Site | 3,485 SF |
| Quality | Average |
| Age | 2004 (5 yrs) |



**Subject Rear**



**Subject Street**

43

Main File No. NV090808bbePRVL Page #23

## Photograph Addendum

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower/Client | Thomas, B.K. | | | | | | |
| Property Address | 3533 Sweden Street | | | | | | |
| City | Las Vegas | | County | Clark | State | NV | Zip Code 89129-7926 |
| Lender | Thomas, B.K. | | | | | | |



**Side View**



**Side View**



**Rear Yard**



**Main Bathroom**



**Kitchen**

44

Main File No. NA209080606PRVl Page #24

## Comparable Photo Page

| | | | | | |
|---|---|---|---|---|---|
| Borrower/Client | Thomas, B K | | | | |
| Property Address | 3533 Sweden Street | | | | |
| City | Las Vegas | County | Clark | State NV | Zip Code 89129-7926 |
| Lender | Thomas, B K | | | | |



**Comparable 1**
9636 Fox Forest Avenue
Prox. to Subj. 0.55 miles NE
Sales Price 120,000
G.L.A. 1,310
Tot. Rooms 6
Tot. Bedrms. 3
Tot. Bathrms. 2
Location Resident. Street
View Area/Average
Site 3,971 SF
Quality Average
Age 1998 (11 yrs)



**Comparable 2**
9821 Malmo Avenue
Prox. to Subj. 0.05 miles SE
Sales Price 130,000
G.L.A. 1,304
Tot. Rooms 5
Tot. Bedrms. 3
Tot. Bathrms. 2
Location Gated Street
View Area/Average
Site 3,485 SF
Quality Average
Age 2003 (6 yrs)



**Comparable 3**
2905 Lotus Hill Drive
Prox. to Subj. 0.78 miles S
Sales Price 155,000
G.L.A. 1,384
Tot. Rooms 4
Tot. Bedrms. 2
Tot. Bathrms. 2
Location Resident. Street
View Area/Average
Site 1,348 SF
Quality Average
Age 1992 (17 yrs)

45

## Comparable Photo Page

| Borrower/Client | Thomas, B K | | | | |
|---|---|---|---|---|---|
| Property Address | 3533 Sweden Street | | | | |
| City | Las Vegas | County | Clark | State NV | Zip Code 89129-7928 |
| Lender | Thomas, B K | | | | |



### Comparable 4

| | |
|---|---|
| 3545 Falkenburg Street | |
| Prox. to Subj. | 0.05 miles NE |
| Sales Price | 124,500 |
| G.L.A. | 1,304 |
| Tot. Rooms | 5 |
| Tot. Bedrms. | 3 |
| Tot. Bathrms. | 2 |
| Location | Gated Street |
| View | Area/Average |
| Site | 3,485 SF |
| Quality | Average |
| Age | 2003 (6 yrs) |



### Comparable 5

| | |
|---|---|
| 7649 Winterthur Court | |
| Prox. to Subj. | 2.67 miles E |
| Sales Price | 135,000 |
| G.L.A. | 1,304 |
| Tot. Rooms | 5 |
| Tot. Bedrms. | 3 |
| Tot. Bathrms. | 2 |
| Location | Gated Street |
| View | Area/Average |
| Site | 5,227 SF |
| Quality | Average |
| Age | 2004 (5 yrs) |

### Comparable 6

| | |
|---|---|
| Prox. to Subj. | |
| Sales Price | |
| G.L.A. | |
| Tot. Rooms | |
| Tot. Bedrms. | |
| Tot. Bathrms. | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

46

1

2

3

4

5

Steven A. Alpert
Bar No. 8353
Price Law Group, APC
1350 E. Flamingo Rd. Ste 15A
Las Vegas, NV 89119
(800) 884-6000 (Tel)
(702)794-2009 (Fax)

Efiled: October 14, 2009

6

## UNITED STATES BANKRUPTCY COURT

7

## DISTRICT OF NEVADA

8

9

10

11

12

13

IN RE:

**BRIAN & RHAYNE THOMAS,**

Debtors

------------------------------------------------------

)
)
)
)
)
)
)
)
)
)
)
)
)

Case no: 09-27642-lbr
Chapter 13

CERTIFICATE OF SERVICE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I do hereby certify under penalty of perjury that on October 14, 2009, I served copies of

**MOTION FOR ORDERS DETERMINING VALUE OF REAL PROPERTY, EXTENT OF SECURED CLAIMS AND EXTINGUISHING THE LIEN OF SELECT PORTFOLIO SERVICING INC; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION IN SUPPPORT**

enclosing said copies in sealed envelopes upon which first –class postage was fully prepaid, addressed to the following persons; and that there is a regular communication by mail between the place of mailing and the places so addressed:

SEE ATTACHED SERVICE LIST

Dated: October 14, 2009

Lidia Ramirez, an employee of Price Law Group, APC

1

**SERVICE LIST**

2

**CHAPTER 13 TRUSTEE**
3  Kathleen A. Leavitt
201 Las Vegas Blvd South, Ste. 200
4  Las Vegas, NV 89101

5  **DEBTOR**
Brian & Rhayne Thomas
6  3761 Warmbreeze Way
Las Vegas, NV 89129
7

8  **CREDITOR**
Select Portfolio Servicing, Inc.
9  P.O. Box 551170
Jacksonville FL 32255-1170
10

11  Select Portfolio Services
3815 S. West Temple
12  Attn: Corporate Legal
Salt Lake City, UT 84115-4412
13

Bryan Marshall – CFO
14  Select Portfolio Services
3815 S. West Temple
15  Salt Lake City, UT 84115-4412

16

17  **AGENT FOR SERVICE OF PROCESS**
**FOR SELECT PORTOFOLIO SERVICES**
18  CSC Lawyers Incorporating Service
2730 Gateway Oaks Drive, Suite 100
19  Sacramento, CA 95833

20  **REQUEST FOR SPECIAL SERVICE**
21  Ascension Capital Group, Inc.
Attn: Capital One Auto Finance Department
22  P.O. Box 201347
Arlington, TX 76006
23

24  McCarthy & Holthus, LLP
811 South Sixth Street
25  Las Vegas, NV 89101

26

27

28